REVISED JUNE 18, 2002
IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

Nos. 01-60678, 01-60679, 01-60680, 01-60681, 01-60682

_____


AMERICAN HERITAGE LIFE INSURANCE COMPANY;
FIRST COLONIAL INSURANCE COMPANY OF FLORIDA;
FIDELITY NATIONAL INSURANCE CORPORATION, doing
business as Republic Finance, Inc.

Plaintiffs-Appellees

-vs-

JOHN D. ORR, BETTY E. SANFORD, FRANKIE L. MOORE,
JIMMIE MARTIN and NATHANIEL HENLEY,

Defendants-
Appellants

_____

Appeals from the United States District Court
for the Northern District of Mississippi

_____

June 14, 2002


Before WIENER and DENNIS, Circuit Judges, and LITTLE, District Judge.[*]

LITTLE, District Judge:

Today we consider a consolidated appeal by Defendants-Appellants from the

district court's order in favor of Plaintiffs-Appellees, compelling arbitration. Defendants-

Appellants include the following parties: John D. Orr, Betty F. Sanford, Frankie L. Moore,

Jimmie Martin, and Nathaniel Henley (collectively referred to as the "Appellants").

_____

[*] Chief District Judge of the Western District of Louisiana, sitting by designation.

Plaintiffs-Appellees are: Fidelity National Corporation d/b/a Republic Finance, Inc. ("Republic Finance" or the "Lender"), and American Heritage Life Insurance Company ("American Heritage") and First Colonial Insurance Company of Florida ("Colonial Insurance") (collectively, the "Insurers").[1] The district court granted Plaintiffs-Appellees' petition to compel arbitration under § 4 of the Federal Arbitration Act (the "FAA"), stayed the pending state court proceedings, and ordered the case closed. 9 U.S.C. § 4.

Although the Appellees are the beneficiaries of the district court's ruling that compelled arbitration, they are appellants as to one issue: Whether this court has jurisdiction to entertain Appellants' appeal. This issue will be disposed of first, and consideration of the portions of the district court's order that the Appellants find wanting will follow.

We ultimately hold that, as a matter of law, the district court order compelling arbitration, which also stays the underlying state court proceedings and closes the case in federal court, is an immediately appealable, final decision under the ambit of 9 U.S.C. § 16(a)(3) of the FAA. As such, this court has jurisdiction to entertain the instant appeal. We also conclude that the district court's order should be affirmed.

## I. FACTS AND PROCEEDINGS

Over the past several years, Appellants obtained consumer loans from Republic Finance, which included the purchase of credit life and credit disability insurance.

---

[1] Republic Finance, American Heritage, and Colonial Insurance will be referred to collectively as "Appellees."

Specifically, when Appellants entered into loan transactions with Republic Finance, Republic Finance sold Appellants disability life insurance to insure the credit against the risks of sickness and death. The Insurers wrote and issued the insurance policies that Republic Finance sold to Appellants.

At the loan closings, the borrowing Appellant and Republic Finance signed a document entitled "Arbitration Agreement" (the "Agreement") to which the Insurers were not signatories. Appellants do not contend that Republic Finance failed to prepare the Agreement in clear language and legible print, or that Republic Finance neglected to place the Agreement on a separate page, that is, apart from the loan transaction documents. Each Agreement contains the following language:

> [A]ny claim, dispute or controversy between undersigned . . . and lender (or the employees, agents or assigns of lender) arising from or relating to the loan or any prior extension of credit by lender to any of the undersigned, insurance written in connection herewith, . . . and whether in tort, contract, breach of duty (including but not limited to) any alleged fiduciary, good faith, and fair dealing duties, including but not limited to the applicability of this arbitration agreement, and the validity of the entire agreement shall be resolved by binding arbitration before one arbitrator in accordance with the Federal Arbitration Act, the expedited procedures of the commercial arbitration rules of the American Arbitration Association, and this agreement.
>
> . . . .
>
> The parties agree that Lender is engaged in interstate commerce, and the transaction is governed by the Federal Arbitration Act, 9 U.S.C. Section 1 - 16.
>
> . . . .
>
> In the event either party files a suit of any kind in any court against the other, or if a counter or cross-claim is filed therein, the defendant or counter-defendant can have the suit stayed and the other party required to arbitrate under this agreement.

Directly above the date and signature lines, in bold, capital, readily legible letters, is the following language.

> THE PARTIES UNDERSTAND THAT BY SIGNING THIS ARBITRATION AGREEMENT, THEY ARE LIMITING ANY RIGHT TO PUNITIVE DAMAGES AND GIVING UP THE RIGHT TO A TRIAL IN COURT, BOTH WITH AND WITHOUT A JURY.

Despite the clear language of the Agreements' provisions mandating arbitration under the FAA and the commercial rules of the American Arbitration Association ("AAA"), Appellants commenced a civil action against Appellees in the Circuit Court of Clay County, Mississippi. Appellants sought monetary damages for, among other alleged transgressions, fraudulent misrepresentation in connection with the loan transaction, conspiracy to "sell credit life, credit disability, property and/or collateral protection insurance . . . that was unnecessary and at an exorbitant premium far in excess of the market rate," breach of implied covenants of good faith and fair dealing, breach of fiduciary duties, and allegations that the Insurers conspired with agents of Republic Finance to sell unnecessary insurance at inflated rates.

Appellees initiated independent actions in the United States District Court, Northern District of Mississippi, only seeking orders of the court to compel arbitration under the FAA, 9 U.S.C. § 1 et seq. and to stay the state court proceedings. After an appropriate analysis of the Appellants' demands and the Appellees' oppositions to them, the district court issued an order compelling arbitration in accordance with the Agreements, staying all related, state court proceedings, and closing the case. The district court determined that Appellants' claims implicated substantially interdependent and concerted misconduct by both the non-signatory Insurers and the

4

signatory Lender. The district court also concluded that: (1) the McCarran-Ferguson Insurance Regulation Act, 15 U.S.C. §§ 1011-1015 (1999) (the "McCarran-Ferguson Act") did not reverse-preempt the FAA because Appellants failed to identify a Mississippi state law or statute that the FAA had invalidated, impaired, or superseded; (2) Appellees' petition to compel arbitration in the district court did not amount to a compulsory counterclaim under rule 13(a) of the Federal Rules of Civil Procedure (the "FRCP"), which would have required Appellees to file the motion to compel arbitration in state court, and that § 4 of the FAA plainly authorized a party against whom litigation has been initiated to commence a separate, original action in federal district court to enforce an arbitration agreement; and (3) Appellants did not proffer sufficient evidence to support a jury trial demand for resolution of the factual issues surrounding the adoption of the Agreements. Of particular importance in the instant dispute is the fact that, in addition to compelling arbitration and staying the pending state court proceedings, the district court ordered the case closed but did not dismiss the action. The final, substantive paragraph of the district court's order provides as follows: "[T]his case is CLOSED." Appellants timely filed notices of appeal.

## II. JURISDICTION

A District Court Order That Compels Arbitration, Stays the Underlying State Court Proceedings, and Closes the Case is an Immediately Appealable, Final Decision Within the Contemplation of § 16(a)(3) of the FAA.

Section 16(a)(3) of the FAA provides as follows: "An appeal may be taken from a final decision with respect to an arbitration that is subject to this title." 9 U.S.C. § 16(a)(3). That section preserves immediate appeal of any "'final decision' with respect

5

to arbitration," regardless of whether the decision is favorable or hostile to arbitration. Id. The FAA does not, however, expressly define the term "final decision." Appellees argue that this court lacks appellate jurisdiction because the district court did not issue an immediately appealable "final decision." Specifically, Appellees maintain that because the district court's order compelled arbitration and "closed" the case instead of compelling arbitration and "dismissing" the case, this court lacks jurisdiction to hear the appeal of the ruling of the district court. Appellees cite Green Tree Fin. Corp.-Ala. v. Randolph, 531 U.S. 79, 121 S.Ct. 513, 148 L.Ed.2d 373 (2000) for the proposition that "closing" a case neither ends the litigation on the merits nor terminates the district court's involvement in the matter, thereby precluding this court's appellate jurisdiction over the dispute. 531 U.S. at 85, 121 S.Ct. at 519. Conversely, Appellants also rely on Green Tree, but for the proposition that, in the instant dispute, "closing" a case is the functional equivalent of "dismissing" it. Appellants argue that by compelling arbitration and "closing" the case, the district court issued an immediately appealable, final decision under § 16(a)(3) because the court's order ended the entire litigation on the merits in that court, leaving nothing more for that court to do but execute the judgment. Id.

In Green Tree, the Supreme Court held that an order dismissing an action is a "final decision" within the traditional understanding of the term, even when the dismissal is in favor of arbitration and the parties could later return to court to enter judgment on an arbitration award. Id. at 85-88, 121 S.Ct. at 519-21. In reaching this result, the Supreme Court applied the well-established meaning of "final decision" as

6

one that "ends the litigation on the merits and leaves nothing more for the court to do but execute the judgment." Id. at 85; 121 S.Ct. at 519 (citing Digital Equip. Corp. v. Desktop Direct, Inc., 511 U.S. 863, 867, 114 S.Ct. 1992, 128 L.Ed.2d 842 (1994), and Coopers & Lybrand v. Livesay, 437 U.S. 463, 467, 98 S.Ct. 2454, 57 L.Ed.2d 351 (1978) (both quoting Catlin v. United States, 324 U.S. 229, 233, 65 S.Ct. 631, 89 L.Ed. 911 (1945)). The Green Tree Court concluded that the reference in 9 U.S.C. § 16(a)(3) to "a final decision with respect to an arbitration that is subject to this title" authorizes appeals from final orders that grant or deny arbitration. Green Tree, 531 U.S. at 89; 121 S.Ct. at 521. No longer is it necessary to conduct an analysis of whether a lawsuit is an "independent" action, brought solely to enforce arbitration rights, or an action in which the request to arbitrate is "embedded" in a case that also raises substantive legal claims. Id. at 88; 121 S. Ct. at 520. By distinguishing the terms "dismiss" and "close" as they apply to disposition of a case, Appellees attempt to thwart the Court's instruction in Green Tree to apply the well-established meaning of "final decision." Appellees contend that the standards for appeal from a dismissal are different from the standards for appeal from orders closing the case.

There is no practical distinction between "dismiss" and "close" for purposes of this appeal. The application of each word results in a termination on the merits, leaving the judgment-rendering court with nothing more to do but execute the judgment. We hold that where a district court with nothing before it but whether to compel arbitration and stay state court proceedings issues an order compelling arbitration, staying the underlying state court proceedings, and closing the case, thereby effectively ending the

7

entire matter on its merits and leaving nothing more for the district court to do but execute the judgment, appellate jurisdiction lies, as the decision is "final" within the contemplation of § 16(a)(3) of the FAA. Thus, we hold that this court has jurisdiction to entertain the instant appeal.

## III. SUBSTANTIVE ISSUES

Appellants assert that the district court erred by: (1) finding that the McCarran-Ferguson Act did not reverse-preempt the application of the FAA to the instant case; (2) denying Appellants a trial by jury to decide the factual issues surrounding the validity of the Agreements; and (3) failing to declare the Agreements unenforceable because of the putative high cost of arbitration. For the reasons hereafter set forth, we find no merit in any issue raised by Appellants.

A. Standard of Review

We review a district court's grant of a motion to compel arbitration de novo, applying the same standard as the district court. OPE Int'l LP v. Chet Morrison Contractors, Inc., 258 F.3d 443, 445 (5th Cir. 2001) (citing Local 1351 Int'l Longshoremen's Ass'n v. Sea-Land Serv., Inc., 214 F.3d 566, 569 (5th Cir. 2000), cert. denied, 531 U.S. 1076, 121 S.Ct. 771, 148 L.Ed.2d 670 (2002); Painwebber, Inc. v. Chase Manhattan Private Bank, 260 F.3d 453, 459 (5th Cir. 2001); Pennzoil Exploration & Prod. Co. v. Ramco Energy, Ltd., 139 F.3d 1061, 1065 (5th Cir. 1998).

B.    The McCarran-Ferguson Act Did Not Reverse-Preempt the Application of the FAA to the Agreements.

Appellants' first argument is that the FAA is inapplicable to the instant Agreements, because the FAA is precluded or preempted by the McCarran-Ferguson Act, 15 U.S.C. § 102 (the "Act").   The Act provides the following:

> No Act of Congress shall be construed to invalidate, impair, or supersede any law enacted by any State for the purpose of regulating the business of insurance, . . .

15 U.S.C.A. § 1012(b).  The Act bars application of the FAA to insurance contracts only in the context of a state statute evincing the same, not mere policy statements of state officials or administrative rule interpretations of governmental entities.  See Miller v. Nat'l Fidelity Life Ins. Co., 588 F.2d 185, 186-87 (5 th Cir. 1979).  The party seeking to avail itself of the Act must demonstrate that application of the FAA would invalidate, impair, or supersede a particular state law that regulates the business of insurance.  Id. at 187.  "The test under McCarran-Ferguson is not whether a state has enacted statutes regulating the business of insurance, but whether such state statutes will be invalidated, impaired, or superseded by the application of federal law."  Id.  Appellants fail to identify any statute that would be impaired, invalidated, or superseded by the application of the FAA.  Instead, Appellants try to perpetrate a judicial end-run by asserting that an attorney general's opinion or insurance department's regulatory, administrative policy is the functional equivalent of a state law relating to insurance, thereby triggering the provisions of the Act.  Appellants' arguments are without merit.

First, "[o]pinions of the Mississippi Attorney General do not have the force of law . . . ."  Frazier v. Lowndes County, Mississippi Bd. of Educ., 710 F.2d 1097, 1100 (5th Cir.

1983) (citing <u>Local Union No. 845, United Rubber, Cork, Linoleum and Plastic Workers of Am., Home Assoc. v. Lee County Bd. of Supervisors</u>, 369 So.2d 497, 498 (Miss. 1979)). Second, because no Mississippi statute addresses, much less prohibits or restricts, arbitration of credit insurance-related claims, disputes, or controversies, the Commissioner of Insurance for the State of Mississippi (the "Commissioner") is without regulatory authority to prohibit arbitration clauses relating to insurance. Appellants espouse a variety of administrative rulings by the Commissioner that disallowed arbitration of all insurance-related claims as proof that insurance claims are never subject to arbitration in the State of Mississippi. In their brief, Appellants state the following: "There is no evidence herein that the Commissioner has ever approved an insurance policy, certificate, or endorsement or any form containing provisions for mandatory and binding arbitration. Consequently, the use of a mandatory, binding arbitration agreement, even though contained in a third-party contract . . . is unlawful in Mississippi." Appellees, however, have submitted into the record a press release issued by the Commissioner on 2 October 2001, which states, in pertinent part, the following:

> [Commissioner] announces first policy filing allowing arbitration.
> [The] Commissioner . . . approve[d] a filing by Primerica Life Insurance Company containing an arbitration provision. This provision would require certain disputes to be resolved through the process of arbitration rather than in the court system. In the event of a dispute, instead of a lawsuit being filed, an independent and neutral arbitrator licensed to practice law in Mississippi would render a decision after hearing the position of the parties. . . . The arbitrator's decision would be final and binding on both the policyholder and Primerica Life Insurance Company.[2]

---

[2] <u>See</u> Mississippi Insurance Department website: www.doi.state.ms.us, 2 October 2001.

10

As the record indicates, Appellants' contention that the Commissioner never permits insurance disputes to be subject to arbitration is incorrect. The record indicates that the Commissioner can permit or disallow insurance disputes to be subject to arbitration as the Commissioner deems fit.

Based upon the clear meaning of 15 U.S.C.A. § 1012(b), we hold that the district court properly concluded that the Act does not apply, and that under the FAA, the Agreements are valid, enforceable, and irrevocable. See Hart v. Orion Ins. Co., 453 F.2d 1358, 1360 (10th Cir. 1971); Hamilton Life Ins. Co. of N.Y. v. Republic Life Ins. Co., 408 F.2d 606, 611 (2nd Cir. 1969).

C.      Appellants Are Not Entitled to a Jury Trial Regarding the Validity of the Agreements.

Second, Appellants maintain that under §§ 2 & 4 of the FAA, they are entitled to a trial by jury on the issue of arbitrability. Section 2 of the FAA states, in pertinent part, that an arbitration clause involving interstate commerce is "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The FAA also provides that "[i]f the making of the arbitration agreement . . . be in issue, the court shall proceed summarily to the trial thereof." 9 U.S.C. § 4.

1.      Right to a Jury Trial Under § 4 of the FAA.

Appellants contend that they deserve a jury trial on the question of the validity of the Agreements. Specifically, by alleging that the Agreements are unconscionable, the products of unequal bargaining power between the parties, lacking mutuality of obligation between the parties, and failing to result in a meeting of the minds,

11

Appellants argue that they have put the "making" of the Agreements in issue, thereby complying with § 4 of the FAA. The district court held, however, that the issues raised by Appellants relate to enforceability of the Agreements, but do not impact the "making of the arbitration" agreement. We agree with the district court's holding and rationale.

Although the FAA permits parties to demand a jury trial to resolve factual issues surrounding the making of an arbitration agreement, or the failure, neglect, or refusal to perform the agreement, it is well-established that "[a] party to an arbitration agreement cannot obtain a jury trial merely by demanding one." Dillard v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 961 F.2d 1148, 1154 (5th Cir. 1992). Further, under the Dillard analysis, a party contesting the "making" of the arbitration agreement must "make at least some showing that under prevailing law, he would be relieved of his contractual obligations to arbitrate if his allegations proved to be true . . . [and] produce some evidence to substantiate his factual allegations." Id. at 1154.

In the instant case, Appellants submitted evidence in the form of affidavits that claim, inter alia, that Appellees did not explain the Agreements to Appellants or that Appellants did not realize that they were waiving a trial by jury. The affidavits proffered by Appellants, however, amount to nothing more than hollow, bald assertions that do not approach fraud in the "making" of the Agreements. See Bhatia v. Johnson, 818 F.2d 418, 421-22 (5 th Cir. 1987) (stating that self-serving affidavits do not amount to the type of evidence required to call the "making of the arbitration" agreement into question). Furthermore, Appellants' affidavits fail to identify any misrepresentation by Appellees peculiar to the Agreements, which forecloses Appellants' ability to state a claim of fraud

12

in the inducement. See Burden v. Check INTO Cash of Kentucky, LLC, 267 F.3d 483, 491 (6th Cir. 2001). Other than their self-serving affidavits, Appellants have not submitted a whisper of evidence to support the conclusion that a jury trial is warranted under § 4 of the FAA. Raising issues of the Agreements' procedural or substantive unconscionability, as Appellants have in the instant case, is not the equivalent of questioning the "making" of an arbitration agreement. See Burden, 267 F.3d at 492. Under § 4 of the FAA and Dillard, therefore, Appellants have not met their burden to show their entitlement to a jury trial.

2.     The Seventh Amendment Right to a Trial by Jury.

Next, Appellants claim that by forcing them to submit their claims to an arbitrator, the district court deprived them of their Seventh Amendment right to a trial by jury. Appellants suggest that the waiver of a constitutional right should be closely scrutinized, and that a waiver of jury trial rights must be clearly and unmistakably expressed.

Appellants' argument is without foundation. First, we point out that Appellants agreed to submit to arbitration because they assented to the terms of the Agreements, which contained the following clause, located just above the signature lines:

> **THE PARTIES UNDERSTAND THAT BY SIGNING THIS ARBITRATION AGREEMENT, THEY ARE LIMITING ANY RIGHT TO PUNITIVE DAMAGES AND GIVING UP THE RIGHT TO A TRIAL IN COURT, BOTH WITH AND WITHOUT A JURY**.

Therefore, by agreeing to arbitration, Appellants have necessarily waived the following: (1) their right to a judicial forum; and (2) their corresponding right to a jury trial.

13

Nevertheless, Appellants cite <u>Wright v. Universal Maritime Serv. Corp.</u>, 525 U.S. 70, 119 S.Ct. 391, 142 L.Ed.2d 361 (1998), for the proposition that an arbitration provision that waives jury trial rights must be clearly and unmistakably expressed. Reliance on <u>Wright</u>, however, is unavailing. Appellants acknowledge that the Supreme Court limited its holding in <u>Wright</u> to the context of a collective bargaining agreement, not to an individual's waiver of his own rights – a situation in which the "clear and unmistakable" standard is not applicable. <u>Id</u>. at 80-81, 119 S.Ct. at 401-02. Thus, outside the area of collective bargaining, in which a third party (the union) seeks to waive contractually the rights of an individual member (the employee), there is no requirement that an arbitration provision must clearly and unmistakably express the waiver of an individual's rights. <u>Williams v. Imhoff</u>, 203 F.3d 758, 763 (10th Cir. 2000).

Appellants further cite the talisman of <u>Miranda v. Arizona</u>, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966) in support of their contention that a waiver of a constitutional right must be voluntarily, knowingly, and intelligently made. <u>Miranda</u>, however, is totally inapposite to the instant case, because <u>Miranda</u> is limited to the protection of the Fifth Amendment rights of criminal defendants after arrest and does not trigger the application of the Seventh Amendment right to a jury trial in a civil case.

The Seventh Amendment right to a trial by jury is limited by a valid arbitration provision that waives the right to resolve a dispute through litigation in a judicial forum. We concur with the following reasoning:

> The Seventh Amendment does not confer the right to a trial, but only the right to have a jury hear the case once it is determined that the litigation should proceed before a court. If the claims are properly before an arbitral forum pursuant to an arbitration agreement, the jury trial right vanishes.

14

<u>Cremin v. Merrill Lynch, Pierce, Fenner & Smith, Inc.</u>, 957 F.Supp. 1460, 1471 (N.D. Ill. 1997). Here, Appellants agreed to resolve their disputes with Appellees through arbitration, and they did so in clear and unmistakable, capitalized and boldfaced words which expressly waived their right to a jury trial as well. Thus, Appellants validly waived their rights to a judicial forum, including the corollary right to a trial by jury.

D. <u>The Agreements Are Not Unenforceable Because of the Alleged High Cost of Arbitration</u>.

Third, Appellants contend that the filing and case service fees for arbitration are oppressive, present a hardship, and are unconscionable, thereby rendering the Agreements unenforceable. As to the potentially burdensome costs of arbitration, the party resisting arbitration has the burden of showing the likelihood that "arbitration would be prohibitively expensive." <u>Green Tree Fin. Corp. v. Randolph</u>, 531 U.S. 79, 81, 121 S.Ct. 513, 148 L.Ed.2d 373 (2000). Appellants assert that they would not be able to afford the fees associated with arbitration under the fee schedule and rules of the AAA.

First, this testimony alone is not sufficient to render the Agreements unconscionable. <u>See</u> <u>Williams v. Cigna Fin. Advisors</u>, 197 F.3d 752, 764-65 (5th Cir. 1999), <u>cert</u>. <u>denied</u>, 529 U.S. 1099, 120 S.Ct. 1833, 146 L.Ed.2d 777 (2000). In <u>Williams</u>, this court held that, without more, the mere possibility that a party may have to share in the payment of the arbitrator's fees is not a sufficient reason to invalidate an arbitration agreement. <u>See</u> <u>id.</u> at 764. Furthermore, when a party fails to specify excessive arbitration costs and instead speculates that a "risk" exists that the party will be saddled with prohibitive costs of the arbitration proceeding, a court is not required to invalidate the arbitration agreement. <u>Green Tree</u>, 531 U.S. at 90-91, 121 S.Ct. at 522.

15

Interestingly, to date, Appellees, not Appellants, have assumed the cost of initiating the arbitration.

Second, the Agreements provide the following: "the party requesting arbitration shall at that time pay the arbitrator $125.00. Lender shall pay arbitrator all other arbitration fees and expense costs for up to one day (eight hours) of proceedings. Any other such costs shall be paid by the non-prevailing party. . . ." According to the record, to date, only Appellees have paid the appropriate fees; however, if Appellees prevail, then Appellants must pay all costs and expenses of arbitration. Presently, the question of which party to the arbitration will ultimately prevail at arbitration is subject to speculation only and, therefore, is not a basis to hold the Agreements unenforceable.

Appellants' reliance on Shankle v. B.G. Maint. Mgmt., Inc., 163 F.3d 1230, 1234-35 (10th Cir. 1999) and Cole v. Burns Int'l Sec. Services Co., 105 F.3d 1465, 1483-89 (D.C. Cir. 1997) is misplaced. In each case, the court addressed an arbitration agreement that did not expressly specify which party would pay the arbitrator's fees or whether an arbitrator's fees could be waived or reduced in cases of hardship. See Cole, 105 F.3d at 1483-89. This case, however, is distinguishable from Coles, because the Agreements expressly state who shall pay the arbitration fees. Moreover, the rules of the AAA provide Appellants sufficient avenues to request fee-paying relief, if necessary. See Rule R-51, Commercial Arbitration Rules.

The mere fact that Appellants face the possibility of being charged arbitration fees, including paying the arbitrator's fee if directed to do so by the arbitrator, does not render the Agreements unenforceable. Accordingly, Appellants have failed to

16

demonstrate that the Agreements' provision relating to fees is unconscionable simply because Appellants may eventually have to pay a portion of the arbitrator's fees.

## IV.  CONCLUSION

For the foregoing reasons, the district court's order compelling arbitration, staying the state court proceedings, and closing the case is AFFIRMED.

DENNIS, Circuit Judge, concurring:

I concur fully in Chief Judge Little's excellent opinion and write separately only to elaborate on the reasons why we have appellate jurisdiction over this matter.

The Federal Arbitration Act ("FAA") permits appeal of any "final decision with respect to an arbitration" that is subject to the Act. 9 U.S.C. § 16(a)(3). On the other hand, "[e]xcept as otherwise provided in section 1292(b) of title 28, an appeal may not be taken from an interlocutory order . . . (1) granting a stay of any action under section 3 of this title; [or] (2) directing arbitration to proceed under section 4 of this title . . . ." 9 U.S.C. § 16(b)(1)–(2).[3] Thus, an order compelling arbitration is appealable only if it is a final order. In other words, the finality of the district court's order determines this court's jurisdiction over the present appeal.

Prior to the Supreme Court's opinion in *Green Tree Financial Corp.—Alabama v. Randolph*, 531 U.S. 79 (2000), this circuit established that "[t]he appropriate test of finality is whether the order involved an independent or embedded proceeding. An order involving an embedded proceeding is always an interlocutory order; an order involving an independent claim is always final." *Altman Nursing, Inc. v. Clay Capital Corp.*, 84 F.3d 769, 771 (5th Cir. 1996). The *Altman Nursing* court explained the independent/embedded distinction as follows: "'Generally, if the only issue before the court is the dispute's arbitrability, the action is considered independent and a court's decision on that issue constitutes a final decision. If, however, the case includes other claims for relief, an arbitrability

_____

[3]Appellate review is permitted under the 28 U.S.C. § 1292(b) exception if the district court certifies an order for immediate appeal.

-18-

ruling does not end the litigation on the merits, but is considered interlocutory only.'" *Id.* (quoting

*McDermott Int'l, Inc. v. Underwriters at Lloyds*, 981 F.2d 744, 747 (5th Cir. 1993)).

In *Green Tree*, the Court established a different analytical framework for determining whether

an arbitration order is an appealable "final decision" or an unappealable "interlocutory order." "The

Court held that an order dismissing an entire action with prejudice and ordering arbitration is an

appealable final decision under § 16(a)(3), regardless of whether the action would be deemed

'independent' or 'embedded' by courts, like ours, that embraced that distinction." *Salim*

*Oleochemicals v. M/V Shropshire*, 278 F.3d 90, 92 (2d Cir. 2002).[4] Rather, the Court applied the

"well-developed and longstanding" definition of "final decision": "It is a decision that ends the

litigation on the merits and leaves nothing more for the court to do but execute the judgment." *Green*

*Tree*, 531 U.S. at 86 (internal quotation and citations omitted). The Court further noted, however,

that, "[h]ad the District Court entered a stay instead of a dismissal in this case, that order would not

be appealable." *Id.* at 87 n.2.

Here, the district court entered an order in each action that (1) compelled arbitration under

section 4 of the FAA, (2) stayed the state-court proceedings, and (3) closed the case. Each

component of those orders merits brief discussion.

First, in *Green Tree*, the Supreme Court returned our jurisdictional analysis to the "plain

language of the statutory text" of the FAA. *See id.* at 88. Section 4 of the FAA permits a party

seeking to compel arbitration to file suit solely for that purpose. *See* 9 U.S.C. § 4; *see also* Edith H.

Jones, *Appeals of Arbitration Orders—Coming Out of the Serbonian Bog*, 31 S. TEX. L. REV. 361,

---

[4]The *Green Tree* case would have qualified as an "embedded" proceeding under our definition of that term in *Altman Nursing.*

373–76 (1990). When a decision on arbitrability is the sole object of a civil action, the district court's determination of that issue amounts to an immediately appealable "final decision" because it "ends the litigation on the merits and leaves nothing for the court to do but execute the judgment." In this case, the Appellees filed independent actions in the district court. By compelling arbitration, the court resolved the only issue before it in each action. The orders are therefore final decisions, and we have jurisdiction to hear this appeal under section 16(a)(3) of the FAA.

Second, the stay of the state-court proceedings does not impact our jurisdictional analysis. Although section 3 of the FAA allows courts to stay litigation brought before them, the statute does not authorize federal courts to enjoin ongoing state proceedings.[5] Consequently, the district court did not grant "a stay of any action *under section 3* of this title . . . ." 9 U.S.C. § 16(b)(1) (emphasis added). More importantly, because the district court reached final decisions with respect to arbitration, the stay component of its orders did not transform them into unappealable "interlocutory order[s]" under section 16(b). *See Sphere Drake Ins. PLC v. Marine Towing, Inc.*, 16 F.3d 666,

---

[5]*See* Jean R. Sternlight, *Forum Shopping for Arbitration Decisions: Federal Courts' Use of Antisuit Injunctions Against State Courts*, 147 U. PA. L. REV. 91, 114 (1998) ("Nothing in either the language or the legislative history of the FAA shows that Congress intended to allow federal courts to enjoin state actions to support the enforcement of arbitration agreements."). The district court's authority to issue arbitral antisuit injunctions directed at state-court proceedings derives, instead, from the All Writs Act, 28 U.S.C. § 1651(a). *Id.* at 146. Congress, however, has limited the injunction power conferred by the All Writs Act. The Anti-Injunction Act provides that "[a] court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments." 28 U.S.C. § 2283. The district court based its stay on the third exception contained in the Anti-Injunction Act, stating that "a stay is required to protect or effectuate this court's judgment and order that the controversy between the parties be submitted to arbitration." Because an order compelling arbitration entered in an independent proceeding is a final decision, it also qualifies as a "judgment" under the Anti-Injunction Act. *See* Sternlight, *supra*, at 170–77. *But cf. id.* at 177 (stating that the third exception "would not seem to apply where an entire case on the merits was filed in federal court"). Thus, the stay entered by the district court was valid as a matter of law. But this finding does not mean that the stay was "necessary as a matter of practicality." *Id.* "Once the federal court has issued an order compelling arbitration, parties would risk sanctions such as contempt of court by refusing to follow the order." *Id.* In short, federal courts should examine closely both the legality and the necessity of a stay pending arbitration prior to interfering with a state-court suit.

667–68 (5th Cir. 1994). "There is nothing interlocutory about an order compelling arbitration that does all that the court has to do." *Clarendon Nat'l Ins. Co. v. Kings Reinsurance Co.*, 241 F.3d 131, 135 (2d Cir. 2001). Accordingly, the stay does not prevent us from exercising appellate jurisdiction.[6]

Third, in my opinion, the closure component of the orders reveals the district court's intention to both retain jurisdiction and *administratively* close the case. It is not uncommon for district courts to compel arbitration but also retain jurisdiction pending the arbitration for the purpose of addressing any subsequent motions to confirm, modify, or vacate the award.[7] But the retention of jurisdiction pending arbitration creates an administrative problem for the district court because the action is likely to remain dormant for an appreciable period of time, and chief judges (at both the appellate and district-court levels) have a sixth sense for cases that appear to be languishing. The administrative closure solves this problem by providing a vehicle for the district court to remove the case from its active files without making any final adjudication. *Lehman v. Revolution Portfolio L.L.C.*, 166 F.3d 389, 392 (1st Cir. 1999). Thus, the administrative closure reflects nothing more than the federal courts' overarching concern with tidy dockets; it has no jurisdictional significance.[8]

---

[6]Even if one of the parties to the arbitration agreement had successfully moved to stay the *federal-court* proceedings pending arbitration, our jurisprudence indicates that the district court's orders would still constitute immediately appealable final decisions. *See Sphere Drake*, 16 F.3d at 668 (holding, in an independent proceeding, that an order compelling arbitration that also stayed all federal and state litigation pending between the parties was final).

[7]The federal courts of appeals have consistently found that district courts intend to retain jurisdiction when they stay proceedings pending arbitration. *See, e.g., Corion Corp. v. Chen*, 964 F.2d 55, 56–57 (1st Cir. 1992); *see also Jolley v. Paine Webber Jackson & Curtis, Inc.*, 864 F.2d 402, 405 (5th Cir. 1989) ("While an order granting a stay postpones active litigation in the district court, it contemplates that the district court will retain jurisdiction to confirm, modify, or, in some cases, to renew the litigation despite the arbitration award."). Yet, in an independent proceeding, a stay would not affect the finality or appealability of an order compelling arbitration. *See supra* note 4.

[8]*See Lehman*, 166 F.3d at 392 ("Properly understood, an administrative closing has no effect other than to remove a case from the court's active docket and permit the transfer of records associated with the case to an appropriate storage repository. In no event does such an order bar a party from restoring the action to the Court's

-21-

In an effort to cast their case in the same mold as *Green Tree*, the Appellants argue that an order closing a case issued in an independent proceeding is the functional equivalent of a dismissal.[9] If we were to accept their argument, however, we would be attributing jurisdictional significance to a designation not sanctioned by the Federal Rules that is typically made for administrative or statistical convenience. This we cannot do. Although the Appellants prevail under the plain meaning of FAA section 16(a)(3), their "functional equivalent" argument lacks merit.

The Appellees, on the other hand, raise their own functional equivalent argument: they suggest that we treat the closure order as a stay order, which would, in turn, deprive us of appellate jurisdiction under footnote two of the *Green Tree* decision.[10] This argument likewise fails, for it loses sight of the final judgment rule. In an independent proceeding, an order that is otherwise final—such as those entered in the present case—does not lose its finality because the district court retains jurisdiction to supervise compliance with the order or to enforce an arbitration award. *Amgen, Inc. v. Kidney Ctr. of Delaware County, Ltd.*, 95 F.3d 562, 566 (7th Cir. 1996) ("[A]n order in an independent proceeding can still be final even if the district court retains jurisdiction over the case to supervise compliance with the order."); *North River Ins. Co. v. Philadelphia Reinsurance Corp.*, 63

active calendar upon an appropriate application.") (internal quotation and citation omitted). I acknowledge that the district court here did not specifically direct that the cases be "*administratively* closed." But a court's use of an imprecise or misleading label cannot alter the character of its action. *See id.* at 392 n.2 (treating a "procedural order of dismissal" as an administrative closure of the case).

[9]In proceedings where the litigants place more than the issue of arbitrability before the district court, an order compelling arbitration and closing the case is not equivalent to a final judgment of dismissal. *See Filanto, S.P.A. v. Chilewich Int'l Corp.*, 984 F.2d 58, 61 (2d Cir. 1993); *see also ATAC Corp. v. Arthur Treacher's, Inc.*, 280 F.3d 1091 (6th Cir. 2002) (rejecting an argument that a perpetual stay coupled with a closing order does not differ from a final judgment of dismissal); *Corion Corp.*, 964 F.2d at 56–60 (holding that an order compelling arbitration, staying proceedings, and administratively closing the case is not final).

[10]*See Green Tree*, 531 U.S. at 87 n.2. ("Had the District Court entered a stay instead of a dismissal in this case, that order would not be appealable.").

F.3d 160, 164 (2d Cir. 1995); *University Life Ins. Co. of Am. v. Unimarc Ltd.*, 699 F.2d 846, 848–50 (7th Cir. 1983).  Moreover, even if the district court had stayed these independent proceedings pending arbitration, the order compelling arbitration would still resolve the only issue before the court in each action, and therefore an immediate appeal from the order would still be permitted.  *See supra* note 4.  In short, even though the district court probably intended to retain jurisdiction over these actions, neither the retention of jurisdiction nor the closure of the cases affects appealability.[11]

Although immediate appeal from an order compelling arbitration may frustrate the oft-cited federal policy favoring arbitration, policy concerns must yield to the plain language of the statutory text of the FAA.  *See Green Tree*, 531 U.S. at 85–89.  S*ee also Corion Corp.*, 964 F.2d at 59 ("[I]mmediate appealability of an arbitration order in a lawsuit which seeks no more than an order directing arbitration is the price or consequence of the final judgment rule, for once the order to arbitrate enters, the court has disposed of the entire controversy then before it.").  In this case, then, we have appellate jurisdiction under section 16(a)(3) of the FAA because the district court entered "final decision[s]" by compelling arbitration in actions brought solely for that purpose.

---

[11]The Appellees bravely complain that this appeal is impeding arbitration.  Any delay, however, is of their own making.  They decided to file independent actions in federal court instead of moving to compel arbitration in the earlier-filed state-court proceedings.  This appeal is one of the consequences of that strategic decision.