**Shane M. O'QUIN, and A Class of Similarly Situated**

v.

**VERIZON WIRELESS, f/k/a Primeco Personal Communications, L.P.**

No. CIV.A.01–855–D.

United States District Court, M.D. Louisiana.

Feb. 7, 2003.

Randall Eugene Estes, Powers & Willard, LLP, Leonard Cardenas, III, John T. Joubert, Henri Michel Saunders, Cardenas Law Firm, Baton Rouge, LA, for Shane M. O'Quin, plaintiff.

Dan E. West, McGlinchey Stafford Lang, Baton Rouge, LA, Michael G. Horner, Thomas A. Roberts, McGlinchey Stafford, PLLC, New Orleans, LA, for Verizon Wireless fka Primeco Personal Communications, L.P., defendant.

### RULING AND ORDER

BRADY, District Judge.

Before the Court is Verizon Wireless' ("Defendant") renewed Motion for to Compel Arbitration and Stay Proceedings (doc. 64). Shane O'Quin ("Plaintiff") has opposed this motion, and multiple reply and response briefs have been filed. Oral arguments are not necessary, and federal subject matter jurisdiction is proper under 28 U.S.C. § 1332, diversity of the parties. The facts necessary to decide this matter are relatively undisputed.

After a review of the briefs, record, and the applicable law, this Court concludes that Defendant's Motion to Compel Arbitration and Stay Proceedings should be GRANTED. As a result, Plaintiff's Motion to Certify a Class Action (doc. 62) is hereby DENIED without prejudice to re-urging should the arbitration lead to further litigation, and Defendant's Motion to Stay Proceedings (doc. 65) pending this Court's disposition of the Motion to Compel Arbitration is rendered moot.

## I. FACTUAL BACKGROUND, PROCEDURAL POSTURE, AND SUMMARY OF ARGUMENTS

In November of 1999, Plaintiff purchased two of Defendant's PCS telephone handsets from a retailer in Louisiana. At that same time, Plaintiff obtained wireless service from Defendant and had the PCS telephone handsets activated to operate on that service. Plaintiff did this by purchasing the handsets and paying a fee. There was no written contract of purchase.

Plaintiff admits that he received the PCS telephone handsets in manufacturer's boxes and that the boxes contained written material. Based on the Plaintiff's admissions and the Defendant's evidence of its standard business procedures, the Court finds that each box contained a Terms and Conditions Pamphlet as well as Owner's Manual. In the Terms and Conditions Pamphlet, there is a paragraph regarding dispute resolution. That paragraph states that "[a]ll disputes between you and PrimeCo shall be settled by binding arbitration using the Wireless Industry Arbitration Rules of the American Arbitration Association...." Additionally, this paragraph states that "[a]ll claims shall be

arbitrated individually, and there shall be no consolidation or class treatment of any claim unless previously agreed to in writing by PrimeCo." Defendant is the legal successor of PrimeCo, and the arbitration provision requires the parties to share in the expenses of the arbitrator and arbitration proceeding.

According to the American Arbitration Association's ("AAA") website, the AAA's administrative fees are based on the amount of the claim or counterclaim. For claims less than $2,000, the filing fee is $150. *See* Wireless Industry Arbitration Rules, *available at* http://www.adr.org. For claims of more than $5 million, the filing fee is a negotiated amount. *Id.* Additionally, the AAA may assess additional administrative hearing and postponement fees. The AAA is a not for profit organization, and also may reduce or waive fees for a party facing extreme hardship. *Id.* According to the Wireless Industry Arbitration Rules, for arbitration agreements between a consumer and a business, special rules apply and supersede the Wireless Industry Arbitration Rules when they conflict.[1] *See Id.* (stating that "[a] dispute arising out of a contract, agreement or plan between a consumer and a business will be administered in accordance with the AAA's *Supplementary Procedures for Consumer–Related Disputes*, unless the parties agree otherwise *after* the commencement of the arbitration")(emphasis added).

Plaintiff originally filed this suit in Louisiana state court alleging breach of contract, negligent omission of material information, fraud, and that the PCS telephone handsets possessed a redhibitory defect. The suit was removed on diversity grounds. Plaintiff moved to certify a class

action, and the Defendant filed a motion to compel arbitration. This case was stayed pending the resolution of a class action settlement that would have encompassed Plaintiff's claims in a California state court. Ultimately, the California court rejected the settlement and Defendant has re-urged its Motion to Compel Arbitration. Defendant argues that the dispute resolution paragraph in the Terms and Conditions Pamphlet was part of the contract between it and Plaintiff and requires this Court to compel arbitration. Plaintiff argues that his only contract with Defendant was oral and that the agreement did not include any arbitration provisions, or alternatively, that the arbitration agreement in the Terms & Conditions Pamphlet is unconscionable and therefore unenforceable.

## II. ANALYSIS AND CONCLUSIONS

The Federal Arbitration Act, codified at 9 U.S.C. § 2, provides that written agreements to arbitrate "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." *See Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 24, 103 S.Ct. 927, 941, 74 L.Ed.2d 765 (1983). There is a liberal federal and state policy in favor of arbitration agreements, and the determination of whether to enforce an arbitration agreement requires this Court to answer two important questions. *See R.M. Perez & Assoc., Inc. v. Welch*, 960 F.2d 534, 538 (5th Cir.1992)(internal citation omitted). These two questions before the Court are: a) was the arbitration provision part of the agreement between Defendant and Plaintiff; and, if so, b) is the arbitration provision unconscionable. *See id.* at 538. No Louisiana or federal court within this Cir-

---

**1.** Curiously, both parties missed this important fact and failed to address how the existence of the AAA's Supplementary Procedures for Consumer–Related Disputes would alter this Court's analysis.

cuit has squarely addressed these questions in this particular context, and thus the Court is left to decide on its own. There is, however, some guidance lurking in Louisiana state law and in decisions by other federal and state courts on arbitration provisions. And it is to these sources that this Court turns to answer the first question.

### a.) Was there an agreement to arbitrate?

The answer to this question requires the answering of two sub-questions. First, does an arbitration agreement require a signature in Louisiana? Second, can a pamphlet stuffed in a box with a consumer product bind a consumer who purchases it- in other words, can an agreement be "money now, terms later" and still be binding?

Fortunately, the first sub-question isn't incredibly difficult under Louisiana law. It is clear that arbitration agreements must be written to be enforceable in Louisiana. *See Valero Ref., Inc. v. M/T Lauberhorn,* 813 F.2d 60, 64 (5th Cir.1987). However, there is no dispute in this case that the purported arbitration agreement in this case is a writing. The parties' argument, and therefore the Court's analysis, centers on the lack of signature on the arbitration agreement.

■ It is true that Plaintiff never signed any agreement to arbitrate his disputes with Defendant. However, it is also true that Louisiana law does not require an arbitration agreement to be signed by the parties. *See In re Taravella,* 734 So.2d 149 (1999). Thus, Plaintiff's signature, or lack thereof, doesn't preclude this Court from finding that there was an agreement to arbitrate.

This Court is not unaware that a contrary conclusion was reached in *Walker v. Air Liquide Am. Corp.,* 113 F.Supp.2d 983

(M.D.La.2000). In that case, the court held that "acceptance of an arbitration agreement *must* be in writing." *See id.* at 985 (emphasis added). Strangely enough, this conclusion was reached without any citation to the Louisiana court's decision in *Taravella,* and without any citation to the cases cited in *Taravella* that stood for a rather contrary proposition, namely, that arbitration agreements require *no* signature. *See, e.g., Hurley v. Fox,* 520 So.2d 467, 469 (1998)(stating that Louisiana's Arbitration Act does not require that the written agreement to arbitrate be signed by the parties)(emphasis added). Thus, it may be that arbitration agreements in the employment context are viewed differently by the courts-as the Louisiana cases cited in *Walker* all dealt with how Louisiana rejects the view that employment manuals are the source of contractual obligations. Given that *Walker* failed to address *Taravella* and its legal underpinnings and relied solely on peculiar aspects of employment law to validate its analysis, this Court rejects Plaintiff's argument that *Walker,* or more appropriately, Louisiana, requires arbitration agreements to be signed.

■ The real sub-question, which is also the more difficult one, is whether the actions of the parties in this case made the arbitration provision in the Terms and Conditions Pamphlet part of the agreement. Unfortunately, neither the Fifth Circuit nor Louisiana has clearly spoken on this issue in this particular context. Moreover, while the drafters of the Uniform Commercial Code have anticipated these circumstances and have a provision which would be most helpful in resolving this matter, *See* U.C.C. § 2–207 (2002), Louisiana has not adopted that particular provision. Had it done so, because Plaintiff is not a merchant-the arbitration provision would most likely not be binding under this case's factual circumstances. *See id.*

However, the Seventh Circuit has considered this issue, and found that a pamphlet contained in a computer box that had an arbitration provision in it could bind a consumer who bought the computer over the telephone. *See Hill v. Gateway 2000, Inc.*, 105 F.3d 1147, 1149–50 (7th Cir.1997), *cert. denied* 522 U.S. 808, 118 S.Ct. 47, 139 L.Ed.2d 13 (1997). The *Hill* decision was an extension of the *ProCD, Inc. v. Zeidenberg*, 86 F.3d 1447 (7th Cir.1996), in which a consumer who purchased computer software at a retail store was bound by a licensing agreement included in the box of software.

Several other federal and state courts have come to similar conclusions under similar factual scenarios, which were all premised on the consumer having the opportunity to return the product in order to avoid any term or condition that he found to be unacceptable. *See I. Lan Sys., Inc. v. Netscout Serv. Level Corp.*, 183 F.Supp.2d 328, 337–38 (D.Mass.2002); *Lozano v. AT & T Wireless*, 216 F.Supp.2d 1071, 1073 (C.D.Cal.2002); *Moore v. Microsoft Corp.*, 293 A.D.2d 587, 741 N.Y.S.2d 91, (N.Y.App.Div.2002); *Brower v. Gateway 2000, Inc.*, 246 A.D.2d 246, 251, 676 N.Y.S.2d 569 (N.Y.App.Div.1998); *M.A. Mortenson Co. v. Timberline Software Corp.*, 93 Wash.App. 819, 970 P.2d 803, 809 (1999). In other words, these courts have found nothing overwhelmingly objectionable in the "money now, terms later" approach to sales of consumer goods. Furthermore, the Supreme Court implicitly bought into this reasoning in *Carnival Cruise Lines v. Shute*, 499 U.S. 585, 587, 111 S.Ct. 1522, 113 L.Ed.2d 622 (1991), where it enforced a forum selection clause that was printed on the back of a ticket received by passengers in the mail subsequent to a ticket purchase.

In fact, the only federal appellate court to evaluate and expressly decline to follow the general rule of "money now, terms later" embodied in *Hill* was the Second Circuit in *Specht v. Netscape Communications Corp.*, 306 F.3d 17, 33 (2d Cir.2002). However, in doing so, the Second Circuit distinguished the *Hill* line of cases on the grounds that those cases involved printed license or terms and agreement forms. *See id.* at 33. In *Specht*, the license at issue was electronic and buried on a computer screen, below the download button. *See id.* at 35. Thus, the Second Circuit concluded that a reasonable purchaser would not have known or learned prior to accepting the invitation to download the software that there were terms and conditions attached, and would have no opportunity to learn of those terms and conditions after the software was downloaded. *Id.*

While this Court admits that it finds something unseemly about allowing consumers to be bound by terms and conditions contained in a product box that were not clearly pointed out at the time of sale, a few facts specific to this case tend to support the application of the "money now, terms later" rule in *Hill*. First, Plaintiff's claim in his opposition memorandum that he never got the Terms and Conditions Pamphlet is somewhat disingenuous. It is that same pamphlet that contains the information regarding the "subsidy lock" and the fee to remove it that is the subject of this litigation. Moreover, the Defendant has provided evidence that its business practice was to include the Terms and Conditions Pamphlet in every PCS telephone handset box. Second, after reviewing the exhibits, the Court finds that the print of the Terms and Conditions Pamphlet is neither illegibly small, nor is it written in a manner that would confuse a reasonable person. Not surprisingly, Plaintiff doesn't offer any substantial argument to the contrary. Third, Plaintiff does not allege that he ever sought to terminate his service with Defendant, which, if done early on, may have released him from any terms and conditions and

left him with a PCS handset with an allegedly redhibitory defect. Moreover, even after discovering the alleged redhibitory defect, Plaintiff still uses Defendant as his wireless service provider, and has made no effort to return the PCS telephone handset for a refund. According to the Terms and Conditions Pamphlet, it is the activation and use of Defendant's wireless services, and not the purchase of the PCS handset, that constitutes the acceptance of the arbitration agreement. Because Louisiana hasn't been reticent in letting actions have the same effect as words when it comes to acceptance of terms in order to form a contract, *see* LA. CIV. CODE ART.1927 (West 2002); *Salim v. La. St. Bd. of Educ.*, 289 So.2d 554, 557 (1973), and because Plaintiff has offered no authority to suggest that "money now, terms later" wouldn't be acceptable in Louisiana, this Court is inclined to let Plaintiff's actions bind him.

■ Plaintiff claims he never read the Terms and Conditions Pamphlet, and that it was never pointed out to him. Unfortunately for Plaintiff, it is axiomatic that contracts do not have to be read in order to be effective. *See McGoldrick v. Lou Ana Foods, Inc.*, 649 So.2d 455, 460 (1994). In fact, the *Hill* court expressly stated that "people who accept [without reading] take the risk that the unread terms may in retrospect prove unwelcome." *See* 105 F.3d at 1148. Moreover, Louisiana courts do not routinely relieve parties of their bad bargains. *See Sutton Steel & Supply, Inc. v. Bellsouth Mobility, Inc.*, 776 So.2d 589 (2000)(internal citations omitted).

■ Plaintiff also complains that the arbitration provision wasn't negotiable, and that it is unfair to allow Defendant to offer

such a "take it or leave it" deal. However, the fact that one party with superior bargaining strength has presented another a "take it or leave it deal," otherwise known as a contract of adhesion, is not, standing alone, enough for Louisiana courts to interfere with enforcement of its terms. *See Andry v. New Orleans Saints*, 820 So.2d 602 (2002). Apparently, courts in Louisiana and elsewhere have countenanced some modicum of adhesionary terms, or evidence of procedural unconscionability in contract formation, in the name of economic efficiency. *See e.g.*, *Andry* at 603–04 (stating that "adhesion contracts are not per se unenforceable...."); *Sutton's Steel,* 776 So.2d at 594 (citing Saul Livitnoff, *Consent Revisited: Offer Acceptance Option Right of First Refusal and Contracts of Adhesion in the Revision of the Louisiana Law of Obligations,* 47 La. L.Rev. 699, 757–59 (1987) for the proposition that Louisiana courts do not refuse to enforce contracts just because they are adhesionary, but rather because they are unduly burdensome or harsh); *Hill,* 105 F.3d at 1150–51; *Lozano,* 216 F.Supp.2d at 1074–75.

Therefore, the Court finds that the Plaintiff and the Defendant did agree to arbitrate all disputes arising from Plaintiff's use of the PCS telephone handset on Defendant's wireless network. Because of the particular factual circumstances of this case, this finding encompasses Plaintiff's inability to use the PCS telephone handset on other providers' networks due to the existence of the "subsidy lock." Therefore, the Court must turn to the secondary and controlling question in this case, namely, whether the agreement to arbitrate is unenforceable because it is substantively unconscionable.[2]

---

2. Because the validity of *any* term in a written agreement included in consumer product packaging must also pass muster under this second question, Plaintiff's hyperbolic assertions that consumers could be unwittingly giving security interests in their homes by merely purchasing a product-which, by the way, are subject to extensive legal requirements in or-

### b.) *Is the Arbitration agreement unenforceable on unconscionability grounds?*

■ Under the Federal Arbitration Act, 9 U.S.C. § 2 (West 2002), "generally applicable contract defenses such as fraud, duress, or unconscionability, may be applied to invalidate an arbitration agreement." *See Doctor's Assoc., Inc. v. Casarotto,* 517 U.S. 681, 687, 116 S.Ct. 1652, 134 L.Ed.2d 902 (1996). This Court must look to Louisiana state law in order to invalidate the arbitration agreement on unconscionability grounds. *See Perry v. Thomas,* 482 U.S. 483, 492 n. 9, 107 S.Ct. 2520, 96 L.Ed.2d 426 (1987). Because this Court has already determined there is an agreement to arbitrate, and there is a liberal policy in favor of arbitration, the burden is on the Plaintiff to show that the arbitration agreement is unenforceable. *See Walton v. Rose Mobile Homes, LLC,* 298 F.3d 470, 473 (5th Cir.2002)(internal citations omitted).

■ Plaintiff's arguments that the arbitration agreement is unconscionable rests on two [3] primary grounds: (1) the costs of arbitration; and the (2) inability of consumer to bring class action claims. In support of these arguments, Plaintiff relies on non-binding jurisprudence from other non-Louisiana state courts and United States District Courts interpreting the law of Louisiana's sister states, without establishing any argument that Louisiana's law is similar and that a Louisiana court would come to the same conclusions. This alone would be enough for this Court to conclude that Plaintiff has failed to carry his burden of proof on the unconscionability of the arbitration agreement, however, the Court will still address each of these contentions as its own independent research indicates that Plaintiff's arguments would fail on their merits anyway.

The Fifth Circuit has recently spoken on what a party opposing arbitration must show in order to resist arbitration because of the burdensome costs of the arbitration process. *See Am. Heritage Life Ins. Co. v. Orr,* 294 F.3d 702, 711–12 (5th Cir.2002). Such a party must show that the arbitration is "prohibitively expensive." *See Id.* The mere possibility that a party may have to share in the payment of the arbitrator's fees is not a sufficient reason to invalidate the agreement. *Id.* Moreover, the mere speculation that a "risk exists that the party will be saddled with prohibitive costs of the arbitration proceeding" does not require this Court to invalidate the agreement. *See id.* at 712.

In this case, the arbitration agreement states that the costs of arbitration are to be shared equally by the parties. Additionally, if read broadly in favor of Plaintiff, like any ambiguous contract term, the phrase "costs of arbitration" could be presumed to include the initial filing fee. The AAA arbitration rules indicate differently, however, and it may well be that Plaintiff is responsible for the filing fee. Granted, the filing fee for arbitration varies on the amount of the claim-but Plaintiff hasn't even speculated what the value of the claim in this case might be. In fact, Plaintiff has failed to address what the fee schedule would be under the appropriate rules. *See* Wireless Industry Arbitration Rules, *available at* http://www.adr.org (stating that "[a] dispute arising out of a contract, agreement or plan between a

---

der to be valid that are independent of Louisiana's general contract law—are not at all persuasive and will not be further discussed by this Court.

**3.** Plaintiff also claims that the arbitration agreement is unenforceable because it was a contract of adhesion. The Court has already rejected that argument in determining whether an agreement to arbitrate exists, and thus, will not revisit it here.

consumer and a business will be administered in accordance with the AAA's *Supplementary Procedures for Consumer-Related Disputes,* unless the parties agree otherwise *after* the commencement of the arbitration")(emphasis added). The AAA's Supplementary Procedures for Consumer-Related Disputes have a much lower fee schedule, and substantially limit how much consumer pays for the arbitration process. *See id.* Additionally, under the Supplementary Procedures, Plaintiff's agreement to arbitrate does not foreclose his option to sue in the Louisiana equivalent of small claims court for claims up to whatever jurisdictional threshold is applicable. *See* Supplementary Procedures for Consumer-Related Disputes, Rule C–1(d), *available at* http://www.adr.org.

But, even accepting Plaintiff's analysis under the Wireless Industry Rules without the special protections reserved for consumers, he still fails to make out his case. The arbitration agreement forecloses the option of proceeding as a class action, thus, one might assume that the claim is unlikely to exceed $2,000, meaning the fee would be $150. Furthermore, Plaintiff has made no application for a reduction in costs due to hardship pursuant to AAA rules, or argument that the AAA would not grant such an application under Plaintiff's circumstances. In essence, all Plaintiff has shown is that, at most, he faces the risk of paying 1/2 of the arbitration fees and costs and that those costs might exceed the value of his claim. However, the Fifth Circuit has already determined that this is not enough to invalidate an arbitration agreement. *See Am. Heritage Life Ins. Co.,* at 712. Moreover, under AAA rules, Plaintiff would be able to recover those costs should he gain a favorable ruling in arbitration. *See* Wireless Industry Arbitration Rule

41–*Scope of Award, available at* http://www.adr.org.

Plaintiff's second argument, that the arbitration agreement is unconscionable because he is precluded from bringing a class action is similarly lacking. The citation of a Florida state court decision in *Powertel Inc. v. Bexley,* 743 So.2d 570 (1999), is irrelevant to this Court's determination on any count. Not only was the arbitration agreement in *Powertel* egregiously one-sided, unlike the arbitration agreement in this case which binds both parties, the *Powertel* case was pursued under Florida's Deceptive and Unfair Trade Practices Act, which apparently permits class actions. Louisiana's legislature, however, has expressly excluded the option of bringing a class action to plaintiffs seeking to recover under Louisiana's Unfair Trade Practices Act. *See* LA. REV. STAT. ANN. § 51:1409 (West 2002).

While it is true that Plaintiff's claims in this case are being pursued as a class action under other legal theories, there is no doubt in this Court's mind that Plaintiff's allegations would ordinarily fall under the Louisiana's Unfair Trade Practices Act. This is because Plaintiff is challenging Defendant's sales of its PCS telephone handsets and its provision of wireless service to Louisiana customers as unfair because it does not adequately disclose the existence of the "subsidy lock," and deceptive, because of the nature of Defendant's "no commitments" advertising and the existence of the "subsidy lock," which limits the use of the PCS telephone handsets to Defendant's network. Moreover, this Court believes that the Plaintiff isn't currently pursuing an Louisiana Unfair Trade Practices cause of action largely because he could not get a class certified under that particular law in either state or federal court.[4]

---

4. This is potentially a jurisdictional problem for the Court, as it is apparent from the face of the Plaintiff's complaint that the jurisdictional minimum for diversity can only be met if this case is certified as a class action. *See* 28 U.S.C. § 1447(c).

In summary, Plaintiff's policy reason for finding the arbitration agreement unenforceable because it precludes class actions have essentially been considered by Louisiana's legislature and rejected when the legislature declined to permit class actions under the Louisiana Unfair Trade Practices Act. Furthermore, even under Plaintiff's stated legal theories, it is not clear that he would be entitled to certification as a class as many of those theories, such as fraud, negligent misrepresentation, breach of contract, and redhibition tend to turn on highly specific facts that would militate against class certification. *See Castano v. Am. Tobacco Co.*, 84 F.3d 734, 740–43 (5th Cir.1996).

Therefore, the Court finds that Plaintiff has failed to show that the arbitration agreement should be invalidated based on unconscionability grounds. This is not to say that any arbitration agreement entered into under similar factual circumstances will be upheld. For example, had Plaintiff been injured because the PCS telephone handset was unreasonably dangerous under Louisiana's Product Liability Act, which does not prohibit class actions, this Court may have reached a different result. *See* La.Rev.Stat. 9:2800.52 *et seq.* (West 2002). However, under these case specific circumstances, the Court finds that Plaintiff has not carried his burden of persuasion.

As a result, Defendant's renewed Motion for to Compel Arbitration and Stay Proceedings (doc. 64) is hereby GRANTED. Defendant's Motion to Stay the Proceedings Pending Resolution (doc. 65) pending this Court's disposition of the Motion to Compel Arbitration is rendered moot, and Plaintiff's Motion to Certify a Class Action (doc. 62) is hereby DENIED without prejudice to re-urging should the arbitration lead to further litigation in the form of judicial review.