STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

05-141


BUSTER RICO, ET UX

VERSUS

CAPPAERT MANUFACTURED HOUSING, INC., ET AL.


************

APPEAL FROM THE
TWELFTH JUDICIAL DISTRICT COURT,
PARISH OF AVOYELLES, NO. 2004-6423,
HONORABLE MARK A. JEANSONNE, DISTRICT JUDGE

************

MICHAEL G. SULLIVAN
JUDGE

************

Court composed of Jimmie C. Peters, Michael G. Sullivan, and Elizabeth A. Pickett, Judges.


**AFFIRMED.**

Fred A. Pharis
Pharis Law Offices
831 DeSoto Street
Alexandria, Louisiana  71301
(318) 445-8266
Counsel for Plaintiffs/Appellees:
        Buster Rico
        Marilyn Rico

Walter K. Jamison, III
Marjorie B. Breaux
Daigle, Scofield, Rivera & Crawford
303 W. Vermilion, Suite 210
Lafayette, Louisiana  70502
(337) 234-7000
Counsel for Defendant/Appellant:
        Cappaert Manufactured Housing, Inc.

SULLIVAN, Judge.

The plaintiffs sued the manufacturer and the retailer of an allegedly defective mobile home. The manufacturer filed an exception of prematurity, contending that the plaintiffs' claims were subject to binding arbitration. The trial court overruled the exception, and the manufacturer has appealed. For the following reasons, we affirm.

**Discussion of the Record**

On November 11, 2002, Buster and Marilyn Rico (the Ricos) purchased a new, manufactured home built by Cappaert Manufactured Housing, Inc. (Cappaert) from Chatelain's Bayou Housing, Inc. (Chatelain's). The Ricos filed the present suit on May 24, 2004, alleging that the ceiling sheet rock had begun to sag throughout the home due to improper construction and that any repair attempts were tardy and ineffective.

On July 12, 2004, Cappaert filed an exception of prematurity, arguing that the Ricos were bound by an arbitration agreement contained in the homeowner's manual that was delivered with the home. That manual has two references to arbitration. The first page of the manual is entitled "BINDING ARBITRATION AGREEMENT" and has signature lines for the buyer, for representatives of both the retailer and the manufacturer, and for witnesses. The language of the arbitration agreement is also found on pages eight and nine of the manual, within the terms of the "ONE YEAR LIMITED WARRANTY."[1] The limited warranty provisions also require that the

---

[1]The language on the page entitled "BINDING ARBITRATION AGREEMENT" is reproduced below, with additional or alternative language appearing in the warranty section noted in brackets:

> All disputes [between us not resolved as outlined above and] not barred by applicable statutes of limitations or otherwise barred by law, resulting from or arising out of the design, manufacture, warranty, or repair of the manufactured home, (including but not limited to: the terms of the warranty, the terms of this arbitration agreement, and all clauses herein contained, their breadth and scope, and any term of any agreement contemporaneously entered into by the parties concerning any goods or services manufactured or provided by Cappaert Manufactured Housing, Inc.; the condition of

purchaser complete and return an "Owner Registration Card" before any warranty service can be scheduled. There is no evidence that the Ricos or any other party signed the "BINDING ARBITRATION AGREEMENT" or that the Ricos completed and returned the "Owner Registration Card," although it is undisputed that Cappaert did perform some warranty repairs on the home.

At trial of the exception, Harold Mouser, a Cappaert representative, testified that the homeowner's manual would have been located in the kitchen drawer of the home. Susan Chatelain, who sold the home to the Ricos, testified that the Ricos would not have seen a copy of the homeowner's manual until the home was delivered to them sometime after the sale. Ms. Chatelain also testified that the only document generated at the time of the sale was an "Invoice" that did not mention arbitration. According to Ms. Chatelain, arbitration was not discussed at the time of the sale, and the Ricos did not sign an arbitration agreement at that time. Ms. Chatelain also indicated that several of her other customers have refused to sign such agreements.

---

the manufactured home; the conformity of the manufactured home to federal building standards; the representations, promises, undertakings, warranties or covenants made by Cappaert Manufactured Housing, Inc., (if any); or otherwise dealing with the manufactured home); will be submitted to BINDING ARBITRATION, pursuant to the provisions of 9 U.S.C. section 1, et seq. Said binding arbitration shall be by one (1) arbitrator selected by the manufacturer with the consent of the owner(s) [owner]. The party seeking affirmative relief shall prepay an[y] and all arbitration filing fees and processing fees. An arbitrator selected to hear any dispute shall be empowered to enter an award of such damages, fees, and costs, as said arbitrator deems just and proper. Notwithstanding, the maximum award permitted, in connection with any dispute submitted to said arbitrator, shall not exceed the amount originally demanded by the party seeking affirmative relief at the time the demand for arbitration is filed. Any party to this agreement who fails or refuses to arbitrate in accordance with the terms of this pre-dispute binding arbitration agreement shall, in addition to any other relief awarded through arbitration, be taxed by the arbitrator with all of the costs, including reasonable attorneys fees, of the other party who had to resort to judicial or other means of compelling [completing] arbitration in accordance with the terms herein contained. **THIS ARBITRATION SHALL BE IN LIEU OF ANY CIVIL LITIGATION IN ANY COURT, AND IN LIEU OF ANY TRIAL BY JURY.**

At the conclusion of the hearing on the exception, the trial court ruled in favor of the Ricos, finding that they did not consent to arbitration, as they were not provided with notice of the arbitration agreement until after the sale. On appeal, Cappaert argues that the trial court erred in overruling the exception of prematurity, given that the Ricos sought to enforce the provisions of the limited warranty in which the arbitration agreement was contained.

## Opinion

*Burden of Proof and Standard of Review*

This court recently reviewed a trial court's refusal to grant an exception of prematurity that would have compelled arbitration in *Abshire v. Belmont Homes, Inc.*, 04-1200, pp. 7-8 (La.App. 3 Cir. 3/2/05), 896 So.2d 277, 283 (citations omitted) (emphasis added), wherein we stated:

> The dilatory exception of prematurity is provided for in La.Code Civ.P. art. 926(A)(1), and its function is to raise the issue that a judicial cause of action does not yet exist because of some unmet prerequisite condition. "It usually is utilized in cases where the law or a contract has provided a procedure for one aggrieved of a decision to seek relief before resorting to judicial action," and "[t]he exceptor has the initial burden of showing that an administrative remedy was available, thus making the judicial action premature." *Thus, the burden is upon* [*the exceptor*] *to establish that a valid and enforceable arbitration agreement exists*. In determining whether a party is bound by an arbitration agreement, we apply ordinary contract principles, and a party cannot be required to submit to arbitration a dispute that he has not agreed to submit. Whether a court should compel arbitration is a question of law. Therefore, "[a]*ppellate review of questions of law is simply to determine whether the trial court was legally correct or incorrect*."

*Arbitration Law:  State and Federal*

The Louisiana Binding Arbitration Law (LBAL) is found at La.R.S. 9:4201-17. However, the arbitration agreement in the present case specifically references the Federal Arbitration Act (FAA), 9 U.S.C. 1, *et seq.*[2]

The FAA, at 9 U.S.C. 2 (emphasis added), provides:

> A *written provision* in any maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole of any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of a contract, transaction, or refusal, *shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.*

As the court explained in *Posadas v. The Pool Depot, Inc.* 02-1819, pp. 3-4 (La.App. 1 Cir. 6/27/03), 858 So.2d 611, 613-14, *writ denied*, 03-2125 (La. 11/7/03), 857 So.2d 502 (citations omitted) (emphasis added):

> Although a state law cannot be used to invalidate an arbitration agreement [governed by the FAA] when the law applies only to arbitration agreements, a state law may be applied to invalidate an arbitration agreement *if that law governs issues concerning the validity, revocability, and enforceability of contracts generally.*  Thus, generally applicable contract defenses, such as fraud, duress, or unconscionability, may be applied to invalidate arbitration agreements without contravening the FAA.

---

[2]As this court recognized in *Abshire*, 896 So.2d at 283, n.4:

 [A]pplication of the Louisiana Binding Arbitration Law as opposed to the Federal Arbitration Act is of little consequence because, as pointed out by the supreme court in *International River Center v. Johns-Manville Sales Corp.*, 02-3060, p. 6 (La. 12/3/03), 861 So.2d 139, 143, the Federal Arbitration Act is "a collection of statutes which is very similar to the Louisiana Binding Arbitration Law."

*See also Dufrene v. HBOS Manufacturing, LP*, 03-2201, p. 3 (La.App. 4 Cir. 4/7/04), 872 So.2d 1206, 1210, where the fourth circuit stated that the federal and state acts are "virtually identical."  The arbitration agreement in *Dufrene* also referenced the FAA, but the court cited both state and federal law in determining its validity.

*See also Snyder v. Belmont Homes, Inc.*, 04-445, p. ___ (La.App. 1 Cir. 2/16/05), ___ So.2d ___, ___, in which the court stated that "[i]n determining whether the parties agreed to arbitrate a certain matter, courts apply the contract law of the particular state that governs the agreement."

"One of the conditions of a valid contract is the consent of both parties. [La.Civ.Code art. 1927.]" *Rodriguez v. Ed's Mobile Homes of Bossier City, La.*, 04-1082, p. 3 (La.App. 3 Cir. 12/8/04), 889 So.2d 461, 464. In *Rodriguez*, this court found that the plaintiffs' consent to arbitration was vitiated by error, as they were under the mistaken belief that they had to sign an arbitration agreement that was not presented to them until after the terms of the sale had been agreed upon, and those terms did not include arbitration. In refusing to enforce an arbitration agreement signed under these circumstances, this court stated that "[a] party cannot, unilaterally, assign additional consideration for the perfection of a sale." *Id.*

In the present case, the Ricos and Chatelain's agreed to the terms of the sale on November 11, 2002, as evidenced by the "Invoice" of that date showing a price and full payment of $45,500.00. Ms. Chatelain testified that the "Invoice" did not reference an arbitration agreement, that the parties did not discuss or sign an arbitration agreement at that time, and that the Ricos would not have received the homeowner's manual, which contained the arbitration agreement, until delivery of the home sometime after the sale. Thus, as in *Rodriguez*, the purchasers did not receive the arbitration agreement until after the terms of the sale had been agreed upon. Unlike *Rodriguez*, however, there is no evidence that the Ricos ever signed such an agreement or that it was ever pointed out to them.

It is well-settled that a valid, written arbitration agreement need not be signed by the parties. *Hurley v. Fox*, 520 So.2d 467 (La.App. 4 Cir. 1988). Absent a signature, however, "the effect or validity of the agreement may be shown by the actions and conduct of the parties." *Id.* at 469. Here, the trial court found that the Ricos did not consent to the arbitration agreement because they were not notified of its existence or its terms at the time of the sale. Cappaert argues, however, that the Ricos' consent is shown by their actions in seeking to enforce the written limited warranty, which contained the arbitration agreement.

Cappaert relies on two federal cases to support this argument. In *Hill v. Gateway 2000, Inc.*, 105 F.3d 1147 (7th Cir. 1997), *cert. denied*, 522 U.S. 808, 118 S.Ct. 47 (1997), the court held that a purchaser who ordered a computer over the telephone was bound by an arbitration agreement contained in additional terms that arrived with the computer, where the purchaser kept the computer beyond thirty days as provided in those terms. The court based its decision on the "accept-or-return" offer that accompanied the product, in which the consumer had "an opportunity to read the terms and to reject them by returning the product." *Id.* at 1148. Similarly, in *O'Quin v. Verizon Wireless*, 256 F.Supp.2d 512 (M.D. La. 2003), the court found that the plaintiff's activation of the defendant's wireless service, rather than his initial receipt of the product, amounted to an acceptance of an arbitration agreement contained in the boxes of two telephone handsets purchased in retail store. In so doing, the court relied upon numerous cases "premised on the consumer having the opportunity to return the product in order to avoid any term or condition that he found to be unacceptable." *Id.* at 516.

6

We find the present case to be distinguishable from those cited by Cappaert. First, we find no evidence that the Ricos were presented with an "accept-or-return" offer, as were the plaintiffs in *Hill* and *O'Quin*, who were given an opportunity to reject the terms of arbitration agreements by returning the products purchased. Second, we note that the arbitration agreements in the Cappeart homeowner's manual did contemplate *a signed acceptance* of their terms, whereas the offers in the above cases were structured for acceptance by action or inaction, *i.e.*, by retaining the product beyond a specified date or activating service for use of the product. The "BINDING ARBITRATION AGREEMENT" found on the first page of the manual had signature lines for all parties (the buyer, the retailer, and the manufacturer) as well as for witnesses. The language of that agreement was repeated within the terms of the "ONE YEAR LIMITED WARRANTY," which also stated that the customer was required to complete and return a registration card before any warranty service could be scheduled. The record does not contain any evidence that any party signed the arbitration agreement or that the Ricos completed and returned the registration card. Although it is clear under *Hurley*, 520 So.2d 467, that a signature is not required for a valid arbitration agreement, we find that the absence of the Ricos' signatures under these circumstances, especially where the arbitration provisions were never brought to their attention, is one factor to be considered in determining whether an agreement can be inferred from their actions and conduct. As the court recognized in *Dufrene v. HBOS Manufacturing, LP*, 03-2201, p. 6 (La.App. 4 Cir. 4/7/04), 872 So.2d 1206, 1211, the plaintiffs' signature "establish[ed] **their** knowledge of [the arbitration agreement's] existence." Such proof is lacking here.

7

Finally, we disagree with Cappaert's assertion that the Ricos' scheduling of warranty work on their home amounted to an acceptance of Cappaert's limited warranty and the arbitration provisions therein. Although the Cappeart homeowner's manual states on page eight that its limited warranty "EXCLUDES AND SUPERSEDES ANY OTHER EXPRESS OR IMPLIED WARRANTY," La.R.S. 51:911.25(A) provides the first retail purchaser of a manufactured home with certain warranties that may not be contractually waived. Under La.R.S. 51:911.25(C) (emphasis added):

> The warranty required by this Part shall be *in addition to* and not in derogation of any other warranties, rights, and privileges which the buyer may have under any other law or instrument. The buyer may not waive his rights under this Part and *any such waiver is hereby prohibited as contrary to public policy and shall be unenforceable and void.*

Thus, by scheduling warranty repairs on their home, the Ricos may have sought to enforce the legal warranty provided in La.R.S. 51:911.25 rather than Cappaert's limited warranty. This conclusion is supported by the lack of any evidence that the Ricos completed the "Owner Registration Card" which, according to the homeowner's manual, was required to validate the limited warranty, and by Cappaert's performance of warranty repairs in the absence of such a card.

As the exceptor, Cappeart bore the burden of proving a valid arbitration agreement. In the absence of a signed agreement, Cappaert had to rely on the actions of the parties in discharging this burden. Based upon the exhibits and testimony introduced at the hearing, we find that the trial court was legally correct in overruling the exception of prematurity.

**Decree**

For the above reasons, the judgment of the trial court is affirmed. Costs of this appeal are assessed to defendant-appellant, Cappaert Manufactured Housing, Inc.

**AFFIRMED.**