960 So.2d 105 (2007)
James Billy LAFLEUR
v.
The LAW OFFICES of ANTHONY G. BUZBEE, P.C., Anthony G. Buzbee, Stern, Miller & Higdon, Jeffrey M. Stern, Ramsey Jones and Clarence Jones.
No. 2006 CA 0466.
Court of Appeal of Louisiana, First Circuit.
March 23, 2007.
*108 Jeremiah A. Sprague, Timothy J. Falcon, Marrero, David Groner, New Iberia, for Plaintiff-Appellee, James Billy Lafleur.
David J. Schexnaydre, Mark A. Myers, Wade D. Rankin, Covington, for Defendants-2nd Appellants, Jeffrey M. Stern and Stern, Miller & Higdon.
James A. Brown, Carey L. Menasco, New Orleans, for Defendants-1st Appellants, Anthony G. Buzbee and the Buzbee Law Firm, P.C.
Clarence Jones, Ramsey Jones, St. Martinville, Pro Se Defendants/Appellees.
Before: CARTER, C.J., WHIPPLE, and McDONALD, JJ.
CARTER, C.J.
Appellants-defendants, Jeffrey M. Stern and Stern, Miller & Higdon (collectively referred to as "the Stern defendants"), seek relief from the trial court's denial of their dilatory exception raising the objection of prematurity, and alternative motions to stay proceedings and compel arbitration.[1] For the following reasons, we affirm the trial court's finding that the arbitration provision in the Power of Attorney and Engagement Agreement (hereafter referred to as the "Agreement") between the Stern defendants and plaintiff, James Billy Lafleur ("Mr. Lafleur"), was adhesionary, and therefore, unenforceable.

BACKGROUND
This case arises out of a contractual relationship between Mr. Lafleur, a Louisiana resident, and his Texas attorneys, the Stern defendants. It is undisputed that on April 5, 2002, Mr. Lafleur executed a written Agreement with the Stern defendants at the Stern defendants' Houston, Texas law office. The Agreement was a five-page preprinted attorney-client contract that had been drafted by the Stern defendants. Mr. Lafleur retained and employed the Stern defendants to pursue his maritime claim for personal injuries that he had sustained on March 19, 2002, while traveling on a vessel in navigable waters off the coast of Louisiana.
On April 5, 2004, Mr. Lafleur filed suit against his attorneys, the Stern defendants, alleging negligent legal representation.[2] Specifically, Mr. Lafleur contended that his attorneys committed legal malpractice by (1) settling his maritime claim without the proper authority from the workers' compensation carrier and his employer; (2) negotiating an inadequate settlement; and/or (3) failing to obtain authority for and payment of his medical services, treatments, and bills from his employer's workers' compensation carrier.
*109 The Stern defendants responded to Mr. Lafleur's lawsuit by filing a dilatory exception raising the objection of prematurity, and alternatively, motions to stay the proceedings and to compel arbitration.[3] The matter was heard on January 5, 2005. The Stern defendants argued that the dispute is subject to arbitration required by the Agreement, and therefore, Mr. Lafleur's claims were premature and the case should be dismissed. Alternatively, the Stern defendants moved for an order compelling Mr. Lafleur to arbitrate and for a stay of the proceedings pending arbitration. The Stern defendants also maintained that Texas law applied according to a provision in the Agreement. Mr. Lafleur argued that Louisiana law applied, because although the Agreement was executed in the state of Texas, all of the other events and contacts occurred in Louisiana. Additionally, Mr. Lafleur opposed arbitration on the grounds that the arbitration provision in the Agreement was unconscionable because it unilaterally applied to him and not the Stern defendants, and it required him to be solely responsible for the cost of the arbitration regardless of the outcome.
After a hearing, the trial court denied the Stern defendants' exception and motions, finding that Louisiana law applied and that the arbitration provision in the Agreement was unenforceable because it was adhesionary, arbitrary, and lacked good faith and mutuality. The Stern defendants appealed, assigning three errors allegedly made by the trial court: (1) error in applying Louisiana instead of Texas law; (2) error in failing to uphold the validity of the arbitration agreement under Texas law; and alternatively, (3) error in holding the arbitration agreement unenforceable under Louisiana law.

BURDEN OF PROOF AND STANDARD OF REVIEW
The burden was on the Stern defendants to establish that a valid and enforceable arbitration agreement exists in this case. In determining whether a party is bound by an arbitration agreement, we apply ordinary contract principles. A party cannot be required to submit to arbitrate a dispute that he has not agreed to submit. Broussard v. Compulink Business Systems, Inc., 41,276 (La.App. 2 Cir. 8/23/06), 939 So.2d 506, 509; Rico v. Cappaert Manufactured Housing, 05-141 (La. App. 3 Cir. 6/1/05), 903 So.2d 1284, 1288. If the Stern defendants satisfy their burden of proof establishing their right to arbitration, the burden then shifts to Mr. Lafleur to demonstrate that he did not consent to the arbitration terms or his consent was vitiated by error, which rendered the arbitration provision unenforceable. See Aguillard v. Auction Management Corp., 04-2804 (La.6/29/05), 908 So.2d 1, 12.
Whether a court should compel arbitration is a question of law. Appellate review of questions of law is simply whether the trial court was legally correct or incorrect. Johnson v. Blue Haven Pools of Louisiana, Inc., 05-0197 (La.App. 1 Cir. 2/10/06), 928 So.2d 594, 597. If the trial court's decision was based on an erroneous interpretation or application of law, rather than a valid exercise of discretion, such incorrect decision is not entitled to deference *110 by the reviewing court. Id. We note that to the extent that the trial court relied on the principles found in Sutton's Steel & Supply, Inc. v. Bellsouth Mobility, Inc., 00-511 (La.App. 3 Cir. 12/13/00), 776 So.2d 589, writ denied, 01-0152 (La.3/16/01), 787 So.2d 316, the trial court was legally incorrect per the Louisiana Supreme Court's recent holding in Aguillard, 908 So.2d at 16-18, abrogating Sutton's Steel. Therefore, we review the instant matter de novo. See Hoffman, Siegel, Seydel, Bienvenu & Centola, APLC v. Lee, 05-1491 (La.App. 4 Cir. 7/12/06), 936 So.2d 853, 858-859, writ denied, 06-1995 (La.11/3/06), 940 So.2d 671.

LAW AND ANALYSIS
The Agreement at issue has two provisions (Paragraph 9 "APPLICABLE LAW" and paragraph 10 "ARBITRATION") pertinent to our analysis. The provisions provide as follows:
9. APPLICABLE LAW

This Agreement shall be construed under and in accordance with the laws of the state in which it is executed, and the rights[,] duties and obligations of [Mr. Lafleur] and of [the Stern defendants] regarding [the Stern defendants'] representation of [Mr. Lafleur] and regarding any matter covered by this Agreement shall be governed by the laws of the state in which this Agreement is executed. Subject to the requirements of Section 10 [the ARBITRATION provision] hereof, any controversy between [Mr. Lafleur] and [the Stern defendants] or either of them regarding [the Stern defendants'] representation of [Mr. Lafleur] or regarding anything covered by this Agreement will be filed in a court of competent jurisdiction in Harris County, Texas.
10. ARBITRATION

Any and all disputes, controversies, claims or demands arising out of or relating to this Agreement or any provisions hereof, the providing of services by [the Stern Defendants] to [Mr. Lafleur], or in any way relating to the relationship between [the Stern defendants] and [Mr. Lafleur], whether in contract, tort or otherwise, at law or in equity, for damages or any other relief, made by or on behalf of [Mr. Lafleur] shall be resolved by binding arbitration pursuant to the Federal Arbitration Act in accordance with the Commercial Arbitration Rules then in effect with the American Arbitration Association. Any such arbitration proceeding shall be conducted in Harris County, Texas pursuant to the substantive federal laws established by the Federal Arbitration Act. The expense of any arbitration shall be a Case Advance pursuing the Claims. Any party to any award rendered in such arbitration proceeding may seek a judgment upon the award and that judgment may be entered by any federal or state court in Harris County, Texas having jurisdiction. [Mr. Lafleur] understands and acknowledges that [Mr. Lafleur] is waiving all rights to a trial by a jury or a judge.
(Emphasis added.)
The choice of law provision (Paragraph 9) specifically states that the applicable law is "[s]ubject to the requirements" of the arbitration provision (Paragraph 10) in the Agreement. The arbitration provision specifically references the Federal Arbitration Act (FAA), 9 U.S.C. § 1-16, as the applicable substantive law, not the laws of the state (Texas) in which the Agreement was executed. The trial court considered several *111 factors in deciding that Louisiana law governed the determination of whether or not the arbitration provision was enforceable. The trial court found, and we agree, that every aspect of Mr. Lafleur's underlying maritime personal injury claim (the object of the Agreement) was connected with Louisiana, and therefore, Louisiana policies were most seriously affected by the Agreement. The place of execution of the Agreement (Texas) was not a factor that outweighed the underlying case's significant connection to Louisiana.
The Louisiana Binding Arbitration Law (LBAL) is found at LSA-R.S. 9:4201-4217. Application of the LBAL as opposed to the FAA is of little consequence because, as pointed out by the Louisiana Supreme Court in International River Center v. Johns-Manville Sales Corp., 02-3060 (La.12/3/03), 861 So.2d 139, 143, the FAA is "a collection of statutes which is very similar" to the LBAL. Jurisprudence has recognized that the FAA and the LBAL are "virtually identical;" therefore, Louisiana courts have recognized that determinations regarding the viability and scope of arbitration clauses would be the same under either law, and federal jurisprudence interpreting the FAA may be considered in construing the LBAL. See Aguillard, 908 So.2d at 18; Gunderson v. F.A. Richard & Assoc., Inc., 05-917 (La. App. 3 Cir. 8/23/06), 937 So.2d 916, 920; Dufrene v. HBOS Mfg., LP, 03-2201 (La. App. 4 Cir. 4/7/04), 872 So.2d 1206, 1209-1210; Shroyer v. Foster, 01-385 (La.App. 1 Cir. 3/28/02), 814 So.2d 83, 87. Thus, since the arbitration provision at issue clearly references the substantive federal laws established by the FAA as the applicable law, and the FAA is virtually identical to the LBAL, the trial court did not err in applying Louisiana law to determine the validity of the arbitration provision.
Furthermore, in determining whether parties agreed to arbitrate a certain matter, courts must apply the contract law of the particular state that governs the agreement. See Banc One Acceptance Corp. v. Hill, 367 F.3d 426, 429 (5th Cir. 2004); Snyder v. Belmont Homes, Inc., 04-445 (La.App. 1 Cir. 2/16/05), 899 So.2d 57, 61, writ denied, 05-1075 (La.6/17/05), 904 So.2d 699. Because Louisiana is the domicile of the plaintiff and the witnesses in the underlying maritime personal injury claim, and it is the location of the personal injury site and the place of the performance of the Agreement, we find that Louisiana has the most significant relationship to the parties and the subject matter of the Agreement. Therefore, we will apply Louisiana law in deciding whether the arbitration provision in the Agreement is enforceable.
We note that the positive law of Louisiana favors arbitration, and any doubt concerning the scope of arbitrable issues should be resolved in favor of arbitration. Aguillard, 908 So.2d at 7-8. Unquestionably, the FAA embodies a liberal federal policy favoring arbitration agreements. Id. The FAA, at 9 U.S.C. § 2, provides in pertinent part:
A written provision in any . . . contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract . . ., or an agreement in writing to submit to arbitration an existing controversy arising out of a contract . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract. (Emphasis added.)
Similarly, the LABL, at LSA-R.S. 9:4201, specifically provides in pertinent part:
A provision in any written contract to settle by arbitration a controversy *112 thereafter arising out of the contract, . . . or an agreement in writing between two or more persons to submit to arbitration any controversy existing between them at the time of the agreement to submit, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract. (Emphasis added.)
Therefore, as a matter of federal law, arbitration agreements and provisions are to be enforced unless they are invalid under principles of state law that govern all contracts. Generally applicable contract defenses such as fraud, duress, or unconscionability, may be applied to invalidate arbitration agreements without contravening the FAA. Iberia Credit Bureau, Inc. v. Cingular Wireless LLC, 379 F.3d 159, 166 (5th Cir.2004).
One of the conditions of a valid contract is the consent of both parties. LSA-C.C. art.1927. Louisiana jurisprudence recognizes that certain contractual terms, especially when contained in dense standard forms that are not negotiated, can be too harsh to justly enforce. The theory of such decisions, often, is that an unconscionable contract or term can be thought of as lacking the free consent that the Louisiana Civil Code requires of all contracts. Iberia Credit Bureau, 379 F.3d at 167. In order to be invalidated, a provision must possess features of both adhesionary formation and unduly harsh substance. Id.
A contract of adhesion is a standard contract, usually in printed form, prepared by a party of superior bargaining power for adherence or rejection by the weaker party. Often in small print, these contracts sometimes raise a question as to whether the weaker party actually consented to the terms. Aguillard, 908 So.2d at 9. However, the real issue in a contract of adhesion analysis is not the standard form of the contract, but rather whether a party truly consented to all the printed terms. Id., 908 So.2d at 12 (referencing Saul Litvinoff, Consent Revisited: Offer Acceptance Option Right of First Refusal and Contracts of Adhesion in the Revision of the Louisiana Law of Obligations, 47 La.L.Rev. 699, 758 (1987)). As the supreme court explained in Aguillard, 908 So.2d at 12:
Consent is called into question by the standard form, small print, and most especially the disadvantageous position of the accepting party, which is further emphasized by the potentially unequal bargaining positions of the parties. An unequal bargaining position is evident when the contract unduly burdens one party in comparison to the burdens imposed upon the drafting party and the advantages allowed to that party. Once consent is called into question, the party seeking to invalidate the contract as adhesionary must then demonstrate the non-drafting party either did not consent to the terms in dispute or his consent was vitiated by error, which in turn, renders the contract or provision unenforceable.
In summation, a contract is one of adhesion when either its form, print, or unequal terms call into question the consent of the non-drafting party and it is demonstrated that the contract is unenforceable, due to lake of consent or error, which vitiates consent.
(Emphasis added).
The trial court found that the arbitration provision in the Agreement at issue was a standard form contract, with small print, and prepared by the Stern defendants. While we agree the print size is small, we do not find that it is unreasonably small. Furthermore, the arbitration provision is in the same size print as the rest of the contract and it is sufficiently set *113 apart with a heading so that the arbitration provision is easily recognizable to anyone reading the contract. However, we emphasize and agree with the trial court's assessment that an attorney-client relationship is more than a contractual one; it is fiduciary, which requires a full and fair disclosure of all the rights and interest which are materially affected by the contract.
The trial court determined that this particular arbitration provision was "unduly burdensome," because it attempts to solely bind the client, Mr. Lafleur, to the arbitration requirement for any dispute brought by or on his behalf, while allowing the attorneys, the Stern defendants, to avail themselves of any and all procedural and substantive law remedies. The arbitration provision also imposes the expense of any arbitration exclusively on the client, Mr. Lafleur, as a "[c]ase [a]dvance" (repayable and reimbursable to the attorneys under the Agreement, Paragraph 7) regardless of the outcome of the arbitration proceedings. The arbitration provision further states that only the client, Mr. Lafleur, "understands and acknowledges that [he] is waiving all rights to a trial by a jury or a judge" for any and all disputes arising out of or relating to the Agreement. The trial court found that under the circumstances, the arbitration provision was arbitrary and adhesionary, and therefore, lacking in the requisite consent necessary for enforcement of the provision. We agree.
We recognize that the client is in an unequal bargaining position when initially contracting with an attorney and signing a pre-printed contract drafted by the attorney. Trust is essential in attorney-client relationships. Clients who have sustained serious personal injuries and seek legal assistance are often overwhelmed with pain and desperate living conditions, particularly if their source of income has disappeared due to their inability to work. It is unconscionable for an attorney to be allowed to draft a contract with an arbitration provision that unilaterally takes away the client's right to a trial should legal malpractice occur or any dispute arise out of the contract between the attorney and client, while allowing the attorney to pursue any and all remedies.
We find this case distinguishable from Aguillard, 908 So.2d at 21, wherein the supreme court found that an arbitration clause in an auction document limited both parties rights to litigate. The Aguillard scenario did not involve the unequal bargaining power that is inherent in the attorney-client relationship. See Aguillard, 908 So.2d at 23. In the case sub judice, the lack of mutuality in the arbitration requirement, along with the obligation that the client alone is to bear the expense of the arbitration proceedings, accentuate the burdensome and unconscionable elements in this arbitration provision that was drafted by the attorneys without any input from the client. These factors make this particular arbitration provision adhesionary and unenforceable.
Accordingly, while we recognize that under federal and state law the weight of the presumption in favor of arbitration is heavy, we find no error in the trial court's conclusion that the arbitration provision in this attorney-client contract was adhesionary. Due to the lack of mutuality, the arbitration provision was unconscionable, and we therefore decline to order arbitration. We affirm the trial court's judgment denying the Stern defendants' dilatory exception of prematurity and alternative motions to stay the proceedings and compel arbitration. We remand this case to the trial court for further proceedings consistent *114 with this opinion, and we assess costs of this appeal to the Stern defendants.
AFFIRMED AND REMANDED.
NOTES
[1] The other appellants-defendants, Anthony G. Buzbee and the Buzbee Law Firm, P.C. (collectively referred to as "the Buzbee defendants"), moved this court for an order of partial dismissal of this appeal after a settlement was reached between the Buzbee defendants and the plaintiff, James Billy Lafleur. The appeal of the Buzbee defendants was dismissed on May 4, 2006, while the appeal of the Stern defendants was maintained.
[2] Mr. Lafleur also filed suit against the Buzbee defendants who were engaged as co-counsel with the Stern defendants, as well as two alleged case-runners, Ramsey Jones and Clarence Jones (collectively referred to as "the Jones defendants"). Mr. Lafleur settled his claim against the Buzbee defendants after this appeal was filed. Because the Buzbee defendants are no longer parties and the Jones defendants are not part of the appeal, this opinion concentrates solely on Mr. Lafleur's claim against the Stern defendants.
[3] Prior to the Stern defendants' exception and motions, the case was removed from the 16th Judicial District Court for the Parish of St. Mary to the United States District Court for the Western District of Louisiana. The case was remanded back to the state district court on October 7, 2004, due to a lack of subject matter jurisdiction because of an absence of complete diversity of citizenship.