# STATE OF LOUISIANA
# COURT OF APPEAL, THIRD CIRCUIT

## CA 14-724


**STEVE H. CROOKS, ET UX.**

**VERSUS**

**LOUISIANA PACIFIC CORP., ET AL.**


**\*\*\*\*\*\*\*\*\*\***

APPEAL FROM THE
TWENTY-EIGHTH JUDICIAL DISTRICT COURT
PARISH OF LASALLE, NO. 38355
HONORABLE J. CHRISTOPHER PETERS, DISTRICT JUDGE

**\*\*\*\*\*\*\*\*\*\***

## BILLY HOWARD EZELL
## JUDGE

**\*\*\*\*\*\*\*\*\*\***

Court composed of Marc T. Amy, Elizabeth A. Pickett, and Billy Howard Ezell, Judges.


**REVERSED AND REMANDED.**

**James J. Davidson, III**
**Christopher Joseph Piasecki**
**Davidson, Meaux, Sonnier, McElligott, Fontenot, Gideon & Edwards**
**P. O. Drawer 2908**
**Lafayette, LA 70502**
**(337) 237-1660**
**COUNSEL FOR PLAINTIFFS/APPELLANTS:**
    **Steve H. Crooks**
    **Era Lea Henderson Crooks**

**Virgil Russell Purvis, Jr.**
**Smith, Taliaferro & Purvis**
**P.O. Box 298**
**Jonesville, LA 71343**
**(318) 339-8526**
**COUNSEL FOR PLAINTIFFS/APPELLANTS:**
    **Steve H. Crooks**
    **Era Lea Henderson Crooks**

**Richard Joseph Wilson**
**Wilson & Wilson**
**P. O. Box 1346**
**Jena, LA 71342**
**(318) 992-2104**
**COUNSEL FOR DEFENDANT/APPELLEE:**
    **L. P. Mineral Owners, LLC**

**Sarah Anne Kirkpatrick**
**Bradley Murchison Kelly & Shea**
**401 Edwards Street, Suite 1000**
**Shreveport, LA 71101-5529**
**(318) 227-1133**
**COUNSEL FOR DEFENDANT/APPELLEE:**
    **Urania Minerals, LLC**

**EZELL, Judge.**

This appeal presents the issue of whether a suit filed by the owner of land against the mineral servitude owner for damages caused by drilling operations is premature when oil and gas operations are ongoing. The trial court granted an exception of prematurity filed by the owner of a mineral servitude and dismissed the plaintiffs' suit without prejudice. The plaintiffs seek reversal of this ruling on appeal.

## FACTS

The land involved in this case consists of approximately 200 acres in LaSalle Parish. On July 26, 2000, Louisiana Pacific Corporation sold the land to Temco Enterprises, Inc., while reserving a full mineral servitude over the property. Subsequently, on August 10, 2000, Temco sold the property to Era and Steve Crooks, subject to the mineral reservation in favor of Louisiana Pacific. In 1968 a portion of the mineral rights was previously conveyed to Urania Lumber Company, Ltd., now known as Urania Minerals, L.L.C. This mineral servitude remained in effect when the Crooks purchased the property. On September 1, 2003, Louisiana Pacific conveyed its mineral rights in the property to LP Mineral Owners, LLC (LPMO).

In 2005, LPMO granted an oil and gas lease to Belle Exploration, Inc. No drilling operations were conducted, so the lease expired by its own terms. In 2009, LP granted an oil and gas lease to Drayco Exploration, LLC. Pursuant to this lease, two wells were drilled and completed. In 2010, SR Acquisition I, LLC acquired the Drayco Lease. This lease is presently an active lease and maintained by oil production.

In 2012, the Crooks filed suit against Louisiana Pacific, LPMO, and Urania for contamination to their property caused by the oil and gas operations. In response, LPMO filed an exception of prematurity. A hearing on the exception was held on May 12, 2014. The trial court sustained LPMO's exception and dismissed the Crooks' claim against LPMO. In sustaining LPMO's exception of prematurity, the trial court held that suit could not be instituted until oil and gas operations ceased on the property. The Crooks appealed this ruling.

**PREMATURITY**

The Crooks claim that the trial court erred in granting the exception of prematurity. The Crooks argue that there is no law requiring them to wait until completion of all mineral production before they can enforce the restoration obligations and demand that the defendants clean up their land.

The relationship between a landowner and the owners of mineral rights is specifically provided for in the Louisiana Mineral Code. The "[o]wnership of land does not include the ownership of oil, gas, and other minerals occurring naturally in liquid or gaseous form" and "[t]he landowner has the exclusive right to explore and develop his property for the production of such minerals and to reduce them to possession and ownership." La.R.S. 31:6. "A landowner may convey, reserve, or lease his right to explore and develop his land for production of minerals and to reduce them to possession." La.R.S. 31:15. A mineral right is an incorporeal immovable that is alienable and heritable. La.R.S. 31:18; La.Civ.Code art. 470. These mineral rights that may be conveyed by a landowner are (1) the mineral servitude; (2) the mineral royalty; and (3) the mineral lease. La.R.S. 31:16.

"A mineral servitude is the right of enjoyment of land belonging to another for the purpose of exploring for and producing minerals and reducing them to

2

possession and ownership." La.R.S. 31:21. Pursuant to La.R.S. 31:22, a mineral servitude owner can "use only so much of the land as is reasonably necessary to conduct his operations" and "[h]e is obligated, insofar as practicable, to restore the surface to its original condition at the earliest reasonable time." Furthermore, the landowner and the owner of a mineral right "must exercise their respective rights with reasonable regard for those of the other." La.R.S. 31:11. Pursuant to these mutual obligations between the landowner and the mineral rights' owners, a mineral servitude owner is liable to the surface owner for damages caused by its lessee's oil and gas operations on the leased property. *Dupree v. Oil, Gas & Other Minerals*, 31,869 (La.App. 2 Cir. 5/5/99), 731 So.2d 1067.

"The dilatory exception of prematurity provided in La.Code Civ. Proc. art. 926 questions whether the cause of action has matured to the point where it is ripe for judicial determination, because an action will be deemed premature when it is brought before the right to enforce it has accrued." *LaCoste v. Pendleton Methodist Hosp., L.L.C.*, 07-8, 07-16, p. 5 (La. 9/5/07), 966 So.2d 519, 523. The function of an exception of prematurity is to determine whether a judicial cause of action is not available yet because of some unmet prerequisite condition. *Rico v. Cappaert Manufactured Hous., Inc.*, 05-141 (La.App. 3 Cir. 6/1/05), 903 So.2d 1284. When the determination of whether an exception of prematurity should have been granted involves a question of law, then the appellate court must determine whether the trial court was legally correct or incorrect. *Id.* Interpretation of statutes involves a question of law. *Thibodeaux v. Donnell*, 08-2436 (La. 5/5/09), 9 So.3d 120.

In *Marin v. Exxon Mobil Corp.*, 09-2368, 09-2371 (La. 10/19/10), 48 So.3d 234, the supreme court held that a lessor of his mineral interests need not wait until

3

the end of a lease to sue a mineral lessee for soil and groundwater damage to his property, because the legal obligations imposed on a lessee did not contain a provision that the lessor had to wait until termination of the lease, aside from La.Civ.Code art. 2683, which contains obligations that arise at the termination of the lease. This court followed this ruling in *Dietz v. Superior Oil Co.*, 13-657, p. 6 (La.App. 3 Cir. 12/11/13), 129 So.3d 836, 841, and held that "while the leases may still be in effect, these claims are not premature because there is no language in the mineral or civil codes to suggest these claims for damages only arise upon lease termination."

As indicated by LPMO, both *Marin* and *Dietz* dealt with claims against a mineral lessee as opposed to a mineral servitude owner. However, we find nothing in the mineral code that requires a landowner to wait until completion of all mineral production before he can bring a suit to enforce the mineral servitude's restoration obligations. The only time limitation found in the mineral code is "at the earliest reasonable time." La.R.S. 31:22. Obviously the legislature recognized that it would be better to remedy any damage sooner rather than later. As in *Marin*, there is no requirement under the law that a landowner has to wait until the end of a lease to sue the mineral servitude owner for damage to his property. There is no reason that a landowner should have to wait to sue for damages to his land prior to the termination of a lease when a lessor, who is also the landowner, does not have to wait for termination of a lease before filing suit. It will be the trier of fact's job to determine whether there is contamination and damage on the land which can be remedied now, just as a trier of fact would be required to do between a lessor and lessee of mineral interests. Therefore, we find that the trial court erred in maintaining LPMO's exception of prematurity.

4

The judgment of the trial court granting LP Mineral Owners' exception of prematurity and dismissing Era and Steve Crooks' suit without prejudice is reversed.  This case is remanded to the district court for further proceedings.  Costs of this appeal are assessed to LP Mineral Owners.

**REVERSED AND REMANDED.**