KOREY BOSSIER

VERSUS

MARK GARBER, ET AL.

\*\*\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF LAFAYETTE, NO. 20164510
HONORABLE KRISTIAN EARLES, DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*\*\*
SYLVIA R. COOKS
JUDGE
\*\*\*\*\*\*\*\*\*\*\*\*

Court composed of Ulysses Gene Thibodeaux, Chief Judge, Sylvia R. Cooks, John D. Saunders, Elizabeth A. Pickett, Billy H. Ezell, Shannon J. Gremillion, Phyllis M. Keaty, John E. Conery, D. Kent Savoie, Van H. Kyzar, and Candyce J. Perret Judges. Judge Marc T. Amy, Recused.

**REVERSED. JUDGMENT VACATED, REMANDED FOR FURTHER PROCEEDINGS.**

Saunders, J., dissents for reasons assigned by Judge Conery.
Ezell, J., concurs and assigns reasons.
Conery, J., dissents and assigns reasons.
Kyzar, J., dissents for the reasons expressed in the dissent by Judge Conery.
Perret, J., concurs for the reasoning asserted by Judge Ezell in his concurrence.

Blaine Barrilleaux
David F. Rutledge
330 Settlers Trace, Suite B
Lafayette, LA 70508
(337) 406-8759
COUNSEL FOR PLAINTIFF/APPELLANT: Korey Bossier

**Oats & Marino**
**Todd Swartzendruber**
**Stephen J. Oats**
**Gordon Square, Suite 400**
**100 E. Vermilion Street**
**Lafayette, LA  70501**
**(337) 233-1100**
**COUNSEL FOR DEFENDANTS/APPELLEES:**
**Sheriff Mark Garber, Rob Reardon and Berkley Insurance Company**

**COOKS, Judge**.

## ON REMAND

In accordance with an order from the Louisiana State Supreme Court, *Korey Bossier v. Mark Garber, Et al*., 18-541(La. 6/15/18), __So.3d__ , and after additional briefing and oral argument, we have considered this case *en banc*.

## FACTS AND PROCEDURAL HISTORY

Korey Bossier (Plaintiff) filed suit against Mark Garber, Sheriff of Lafayette Parish and others (Defendants) alleging he was injured when he slipped and fell in his jail cell while incarcerated at the Lafayette Parish Correctional Center (LPCC). Plaintiff alleges his injuries occurred on two occasions, August 31, 2015 and September 17, 2015. He alleges he fell in his cell "as a result of water running freely from the nearby showers into [his] cell." Plaintiff allegedly received a copy of the 2012 version of the LPCC Handbook containing the procedure for filing a "grievance" as an inmate when he arrived at the facility. Defendants admit that the Handbook was revised on September 8, 2015. Plaintiff asserts he did not receive a copy of the revised Handbook. Defendants maintain that the change in the rule was a minor change to its grievance procedure requiring inmates to submit their grievance electronically rather than on paper. Regardless of the change in the procedure, Plaintiff asserts the Handbook as first presented, and as revised, does not provide any administrative procedure for filing a complaint regarding personal injury. Defendants maintain the Handbook language under their interpretation covers such complaints and requires Plaintiff to timely pursue a remedy under administrative procedures in accordance with state laws. Defendants filed an exception of prematurity and prescription asserting Plaintiff failed to timely exhaust his administrative remedy before filing suit. The trial court granted Defendants'

exceptions dismissing Plaintiff's claims with prejudice at his cost. Plaintiff appeals asserting the "trial court erred in granting Defendants' Exceptions of Prematurity and Abandonment."

## LEGAL ANALYSIS

> The dilatory exception of prematurity provided in La.Code Civ. Proc. art. 926 questions whether the cause of action has matured to the point where it is ripe for judicial determination, because an action will be deemed premature when it is brought before the right to enforce it has accrued." *LaCoste v. Pendleton Methodist Hosp., L.L.C.,* 07–8, 07–16, p. 5 (La.9/5/07), 966 So.2d 519, 523. The function of an exception of prematurity is to determine whether a judicial cause of action is not available yet because of some unmet prerequisite condition. *Rico v. Cappaert Manufactured Hous., Inc.,* 05–141 (La.App. 3 Cir. 6/1/05), 903 So.2d 1284. When the determination of whether an exception of prematurity should have been granted involves a question of law, then the appellate court must determine whether the trial court was legally correct or incorrect. *Id.* Interpretation of statutes involves a question of law. *Thibodeaux v. Donnell,* 08–2436 (La.5/5/09), 9 So.3d 120.

*Crooks v. Louisiana Pac. Corp.*, 14-724 p. 3 (La.App. 3 Cir. 12/10/14), 155 So.3d 686, 688.

We review the trial court's ruling on the exception of prematurity under the de novo standard of review as this ruling is based upon the interpretation of an administrative rule that affects Plaintiff's right to file suit. In *Ngo v. Estes*, 04-186 p. 3 (La.App. 3 Cir. 9/29/04), 882 So.2d 1262, 1264 this court, relying on the decision in *Cheron v. LCS Corrections Servs., Inc.,* 02-1049 (La.App. 1 Cir. 2/23/04), 872 So.2d 1094, *writ granted,* 04-703 (La.5/14/04), 872 So.2d 532, (emphasis in original and added) recognized that:

> **The party that raises the objection of prematurity has the burden of showing that *an administrative remedy is available,*** by reason of which the judicial action is premature. **Once the existence of an administrative remedy is established**, the burden shifts to the plaintiff to show that the specified administrative remedies or procedures have been exhausted or that the present situation is one of the exceptional situations where

2

the plaintiff is entitled to judicial relief because any administrative remedy is irreparably inadequate.

The present Defendants have the burden to prove that an administrative process and remedy was in fact available to Plaintiff. Only then will the burden shift to Plaintiff to show he exhausted the administrative process before filing suit. We find three distinct reasons why Defendants fail to prove the existence of an administrative process under which Plaintiff could seek redress for his alleged injuries: (1) the recited Handbook provision is ambiguous; (2) the Handbook does not provide meaningful notice to an inmate that the recited grievance provision includes the manner in which he would be required to file a complaint for personal injury; and (3) Defendants failed to abide by the very procedure they assert applies, instead, by their own admission, they created a procedure involving participation by a risk manager empowered to offer settlement terms to resolve Plaintiff's claim which went far beyond the recited grievance procedure.

The pertinent language in both versions of the LPCC handbook reads the same except as to part (b) which was changed in a later version of the Handbook to provide for filing to be done "through the Telmate [computer] system" rather then handwritten and placed in the Administrative Remedy Procedure Box (ARP box) as earlier instructed.

> A grievance is a complaint. *It must concern a rule or procedure, complaint of expression or misconduct **by a deputy** in administering such rules or operation of the LPCC.* A personal dispute between an offender and an employee is not considered grounds for a grievance.

>> 1) If you have a grievance, you must follow these procedures:

>>> a) ***Attempt to resolve the grievance with the deputy***.

>>> b) *If unsuccessful*, submit a grievance form in the Administrative Remedy Procedure (A.R.P.) box within thirty (30) days of the incident. All grievances must be

> legible and must provide specific dates, times and ***persons involved.***

Defendants assert the phrase "operation of the LPCC" covers Plaintiff's allegations concerning the allegedly dangerous condition that injured him. They maintain the provision should be read as though a period appears after the word "rules" making the phrase "or operation of the LPCC" disjunctive, standing alone, rather than referring to the actions of "a deputy" as plainly written. But even under such a strained reading of the provision it cannot be cogently argued that this language includes the filing of a complaint seeking redress for damages resulting from a personal injury allegedly occurring in the jail as a result of Defendants' negligence. Filing a complaint regarding a dangerous condition that might lead to injury is not the same as filing a claim alleging one has suffered a personal injury as the result of an allegedly dangerous condition. Moreover, the recited provision simply cannot be read to mean that an inmate would be expected to submit his personal injury claim to a deputy and attempt to first resolve his claim with a deputy. That is quite simply an absurd proposition.

Plaintiff asserts the language is, at best, ambiguous and/or simply does not provide any administrative procedure by which an inmate can assert, or seek redress for, a personal injury claim. We agree with Plaintiff. We find the language relied on by Defendants to invoke the provisions of La.R.S. 15:1171,[1] La.R.S.

---

[1]     A. The Department of Public Safety and Corrections and each sheriff may adopt an administrative remedy procedure at each of their adult and juvenile institutions, including private prison facilities.

    B. The department or sheriff may also adopt, in accordance with the Administrative Procedure Act, administrative remedy procedures for receiving, hearing, and disposing of any and all complaints and grievances by adult or juvenile offenders against the state, the governor, the department or any officials or employees thereof, the contractor operating a private prison facility or any of its employees, shareholders, directors, officers, or agents, or a sheriff, his deputies, or

4

15:1172(B)(1) and (C) is at the very least, ambiguous and *does not adequately place a potential claimant on notice that these procedures are intended to apply to filing a complaint with LPCC regarding a slip-and-fall injury allegedly sustained while incarcerated* in the facility.

We believe a fair reading of the provision leads us to conclude that it largely speaks to actions of deputies and their conduct or misconduct concerning their actions in implementing the rules, procedures and operations of the facility. The provision instructs the inmate to first attempt to resolve their "grievance" with the deputy that they have the problem with, and further instructs if that attempt is unsuccessful to submit a written complaint which includes identifying the "persons involved," i.e. the person or persons who are the subject of the complaint. The written procedure then provides how the written complaint will be handled. It is first

employees, which arise while an offender is within the custody or under the supervision of the department, a contractor operating a private prison facility, or a sheriff. Such complaints and grievances include but are not limited to any and all claims seeking monetary, injunctive, declaratory, or any other form of relief authorized by law and by way of illustration includes actions pertaining to conditions of confinement, personal injuries, medical malpractice, time computations, even though urged as a writ of habeas corpus, or challenges to rules, regulations, policies, or statutes. Such administrative procedures, when promulgated, shall provide the exclusive remedy available to the offender for complaints or grievances governed thereby insofar as federal law allows. All such procedures, including the adult and juvenile offender disciplinary process, promulgated and effective prior to June 30, 1989, shall be deemed to be the exclusive remedy for complaints and grievances to which they apply insofar as federal law allows.

C. The department or sheriff may also adopt procedures for adult or juvenile offenders to discover and produce evidence in order to substantiate their claims and promulgate rules and regulations governing the recommendation, review, and approval of an award for monetary relief.

D. For the purposes of this Part, status as an "offender" is determined as of the time the basis for a complaint or grievance arises. Subsequent events, including posttrial judicial action or release from custody, shall not affect status as an "offender" for the purposes of this Part.

La. R.S. 15:1171.

reviewed by the designated ARP officer who then sends it on to the "appropriate staff member" who then investigates the complaint. The inmate is to receive a written reply within fourteen days after the staff member receives the complaint. If the inmate is dissatisfied with the outcome of that decision, he can submit his grievance to the assigned Section Lieutenant who can further investigate the matter. The Lieutenant has fourteen days from the time he receives the complaint to respond. If the inmate is still dissatisfied with the handling of his complaint he may resubmit his grievance to the Jail Commander or his designee, who must reply within fourteen days. All of these provisions make it clear that the grievance procedure as written does not contemplate the manner or procedure for reporting a personal injury suffered by an inmate. Neither a deputy nor any of the persons listed in the chain of command have any authority to resolve a personal injury claim or award any compensation to the inmate for his injuries.

Plaintiff's attorney points out that Plaintiff reported his injury to deputies who took photographic evidence and turned this over to the risk manager. Defendants admitted in oral argument that Plaintiff's attorney and the risk manager engaged in an effort to resolve Plaintiff's claim and the risk manager made an offer to settle the matter. Defendants also informed the court at oral argument that they terminated the services of the risk manager after the filing of this matter and now such matters are referred directly to the sheriff. All of which belies Defendants' assertion that the recited "grievance procedure" was intended or designed to include reporting personal injury claims and provided an administrative mechanism to resolve them. Further, Defendants admit they knowingly and intentionally deviated from prescribed procedure in this case. They do not dispute the then employed risk manager was engaged in negotiation with Plaintiff's attorney without Plaintiff first

initiating the process it now alleges was sacrosanct. We have repeatedly held that a defendant's failure to follow its own administrative procedure "cannot and should not enure to [their] benefit." *Pete v. State, Dep't of Corr.*, 17-1131 p. 13 (La. App. 3 Cir. 5/9/18), 247 So. 3d 1084, 1093.

Our state constitution guarantees that: "All courts shall be open, and every person shall have an adequate remedy by *due process of law* and justice, administered without denial, partiality, or unreasonable delay, for injury to him in his person, property, reputation, or other rights." La. Const. art. I, § 22 (1974) (emphasis added).

> The Louisiana Supreme Court in *Wilson v. City of New Orleans,* 479 So.2d 891, 894 (La.1985) also expressed:
>
>> [The] central meaning of procedural due process is well settled. Persons whose rights may be affected are entitled to be heard; and in order that they may enjoy that right, **they must first be notified.**
>
> An equal concomitant to this right, thus, is 'the *right to notice* and opportunity to be heard' which must be extended at a meaningful time *and in a meaningful manner. Fuentes v. Shevin,* 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972); *Armstrong v. Manzo,* 380 U.S. 545, 85 S.Ct. 1187, 14 L.Ed.2d 62 (1965)…
>
> As stated in *Wilson* "due process is not a technical concept with a fixed content unrelated to the time, place and circumstances." Rather, it requires the implementation of flexible rules which may yield to the demands of the particular situation. *Morrissey v. Brewer,* 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972). The Louisiana Supreme Court in *Wilson* very aptly articulated:
>
>> *The constitutional right to be heard is a basic aspect of the duty of government to follow a fair process of decision making when it acts to deprive a person of his possessions. The purpose of this requirement is to protect a person's use and possession of property from arbitrary encroachment—to minimize substantially unfair or mistaken deprivations of property.*
>
> *Wilson,* 479 So.2d at 894 (citations omitted and emphasis added).

*Rubin v. Lafayette Par. Sch. Bd.*, 93-473 p. 9 (La. App. 3 Cir. 12/14/94), 649 So. 2d 1003, 1010-11, *writ denied*, 95-0845 (La. 5/12/95), 654 So. 2d 351(emphasis added).

In *Wallace v. GEO Group, Inc.*, 11-863 (La. App. 3 Cir. 2/1/12), 84 So. 3d 750, this court recognized that prison facilities have "[a] duty to inform [inmates] of the procedure necessary to move through the administrative review process." *Id*. at 756. And as mentioned earlier, this court recently held that not only must the administrative provisions provide *meaningful notice* to the inmate of how to proceed to file a claim for personal injury, the sheriff must also comply with the procedural requirements provided in the Handbook. The failure of LPCC to promulgate administrative procedures for redress of injuries sustained while in custody, *in a manner that clearly and in plain language informs an inmate*, i.e. puts him on notice that if he is hurt while in jail he must make a claim within a specified period of time and in a specified manner, cannot inure to the benefit of LPCC. We note that LPCC's Handbook contains detailed instructions and procedures for inmates to report a sexual assault on their person. This injury to an inmate is not left to an ambiguous provision. Thus, it appears LPCC is capable of promulgating a clear administrative policy and procedure detailing how, when and where to file a claim for personal injury if it intends to affect an inmate's constitutional right to seek compensation for his injuries as provided by law.

Further, even if the grievance procedure can be read to refer to the generic overall operation of the facility including, for example, bad food, leaky pipes, or fights in the jail, complaints seeking redress for injuries to one's person is not easily associated. Moreover, it is absurd to suggest that a deputy, Section Lieutenant, or

8

Jail Commander has any authority to resolve Plaintiff's, or any inmates, claim for damages resulting from injuries alleged to have occurred as a result of LPCC's negligence. And yet, were we to accept Defendants' reading of the Handbook provision such would be the result.

Defendants assert Plaintiff understood the meaning of the grievance provision because he filed three other grievances in accordance with the Handbook instructions. We have reviewed those complaints contained in the record and conclude that all three complaints are further evidence supporting our conclusion concerning the type of complaint Plaintiff understood the grievance procedure to cover. In Inmate Request #001767543 Plaintiff's "Description of Problem" stated "Deputy Harris was very disrespectful threatened my life and Lock me down for nunin she said if I was on the street was going to shot my ass. I scared for my life not known wat she capable of." His requested "Action(s) to Remedy Grievance" states: "I think she should be revaluated an see if she fit for this job caused it all was a problem." And in his third grievance, Request # 001768318 Plaintiff described his "Problem" as: "Deputy Harris wrongful wrote me up an had me move. She also threatin my life by stating she was goin to shoot me in the ass if we were in the street don't kwon her capabilitys. I'm afraid for my life." Again he suggested the "Action(s) to Remedy Grievance" would be "She need to be reevaluate an see if she really fit for dis job cause Im goin to the news people with this upon my release." In Inmate Request #001770592, Plaintiff's complaint was that he "received a tray just a sausage an bread a cookie dat no way to feed a grown man." His requested "Action(s) to Remedy Grievance" was that he would like the deputies to bring him a proper meal. These grievances reported by Plaintiff in accordance with the

9

Handbook policy further demonstrate the type of complaints Plaintiff understands the provision includes.

We emphasize the Handbook, as presented here, is silent regarding any other step in the alleged administrative process by which an inmate may notify LPCC of a negligent injury tort claim. Defendants point us to no other provision in their Handbook. We find, the statutory provisions relied upon by the trial court and Defendants are not applicable.[2] LPCC failed to promulgate an administrative

---

[2] A. Purpose--to constitute the department's "administrative remedy procedure" for offenders as a regulation.

B. Applicability--deputy secretary, chief of operations, regional wardens, wardens, and sheriffs or administrators of local jail facilities. Each unit head is responsible for ensuring that all unit written policies and procedures are in place to comply with the provisions of this regulation.

C. Policy. It is the secretary's policy that all offenders and employees have reasonable access to and comply with the department's "administrative remedy procedure" through which an offender may seek formal review of a complaint relating to most aspects of his incarceration. Offenders housed in local jail facilities shall also be afforded reasonable access to a grievance remedy procedures.

D. Administrative Remedy Procedure—Purpose

1. On September 18, 1985, the Department of Public Safety and Corrections installed in all of its adult institutions a formal grievance mechanism for use by all offenders committed to the custody of the department. The process bears the name Administrative Remedy Procedure (ARP). Offenders are required to use the procedure before they can proceed with a suit in federal and state courts.
2. Corrections Services has established the administrative remedy procedure through which an offender may seek formal review of a complaint which relates to any aspect of his incarceration if less formal methods have not resolved the matter. Such complaints and grievances include, but are not limited to any and all claims seeking monetary, injunctive, declaratory or any other form of relief authorized by law and by way of illustration, includes actions pertaining to conditions of confinement, personal injuries, medical malpractice, time computations, even though urged as a writ of habeas corpus, or challenges to rules, regulations, policies or statutes, including grievances such as offender requests for accommodations under the Americans with Disabilities Act and for complaints of sexual abuse under the prison rape elimination act.

3. Through this procedure, offenders shall receive reasonable responses and where appropriate, meaningful remedies.

22 La. Admin.Code Pt I, § 325

process through which inmates may make a claim for damages as a result of personal injury allegedly sustained while incarcerated at Defendants' facility. Defendants could easily have included language in the policy handbook plainly setting forth the procedure to be followed when an inmate is injured in the facility. Constitutional due process requires no less. An inmate must be clearly put on notice of how and when to make a claim if he gets hurt while incarcerated in a facility. Ambiguous language of the sort used by Defendants here does not amount to clear notice sufficient to meet the test of due process. If the reasonable minds of twelve jurists sitting *en banc* can differ as to the meaning of the word "operations" found in the provision in question, how can an obviously uneducated incarcerated inmate be expected to interpret "operations" as including personal injury claims.

We must hold, Plaintiff's right to seek redress for alleged tort claims in district court within the one-year period of prescription provided by Louisiana law has not been pre-empted. *See* La.Civ.Code arts. 2315, 2317, and 2317.1 and La. Civ.Code art. 3492. *See also Stokes v. Strain*, 99-1150 (La. App. 1 Cir. 6/23/00), 768 So. 2d 619, holding that "[i]f a sheriff does not adopt and implement procedures pursuant to the CARP, an inmate's access to the courts is procedurally unaffected." *Id.* at 621 (citation omitted).

The judgment of the trial court is hereby reversed, vacated and set aside. The matter is remanded to the trial court for further proceedings consistent with this ruling. All costs on appeal are assessed against Defendants.

**REVERSED. JUDGMENT VACATED, REMANDED FOR FURTHER PROCEEDINGS.**

11

KOREY BOSSIER

VERSUS

MARK GARBER, ET AL.

**Ezell, J., concurs and assigns reasons.**

It is clear that this case and the case which I authored are similar but are not the same factually.

In *Barlow v. Garber*, 17-401 (La.App. 3 Cir. 11/2/17), 230 So.3d 1002, no action was taken by the plaintiff at all, to express his grievance or complaint. The plaintiff in *Barlow* was familiar with the procedure as he used it to file another complaint.

KOREY BOSSIER

VERSUS

MARK GARBER, ET AL.

Conery, J., dissents and assigns reasons.  I would adhere to this court's opinion in *Barlow v. Garber*, 230 So.3d 1002 (2017).

The majority recognizes that the grievance procedure applies to the generic operations of the jail, and gives as an example "leaking pipes".  This is the exact allegation here, as plaintiff claims water from the nearby showers was allowed to leak into his cell and he slipped in the water.  While the majority makes excellent points in its opinion, the simple, uncontested fact is that plaintiff did not follow the administration procedures act.

I would submit that the administrative procedures act is clear and unambiguous.  Plaintiff did not follow the act.  His suit is premature.  I would grant the exception.